**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SONIA QUINTERO,
*Defendant-Appellant.*

No. 19-10300

D.C. No.
4:17-cr-01895-
JAS-LAB-1

OPINION

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted November 17, 2020
Phoenix, Arizona

Filed April 29, 2021

Before: Richard C. Tallman, Jay S. Bybee, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's order committing Sonia Quintero, who was found incompetent to stand trial on federal drug charges, to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for inpatient assessment of her potential for restoration to competency.

Quintero argued that the district court should have ordered evaluation and treatment in an outpatient facility and that her commitment violates her statutory and constitutional rights.

The panel held that § 4241(d) mandates that district courts commit mentally incompetent defendants to the custody of the Attorney General for treatment, without discretion for the court to order a particular treatment. The panel rejected Quintero's contention that the Attorney General's and the Bureau of Prisons' policies contravene § 4241(d) in violation of the Take Care Clause of Article II of the Constitution and general separation of powers principles.

The panel reaffirmed that § 4241(d) does not violate Quintero's substantive due process rights, and held that mandatory commitment under § 4241(d) comports with the requirements of procedural due process.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Quintero's three arguments under the equal protection component of the Due Process Clause of the Fifth Amendment: (1) that § 4241(d) denies her equal protection because it imposes a less stringent standard for confinement than the Bail Reform Act; (2) that mentally incompetent pretrial defendants are subject to less stringent standards for commitment than convicted persons who, having served their sentence, are going to be committed civilly; and (3) that § 4241(d) violates her right to equal protection because federal pretrial defendants are subject to a less stringent commitment standard than Arizona state defendants.

The panel reviewed for plain error Quintero's argument, raised for the first time on appeal, that § 4241(d) could create a conflict of interest for counsel, inconsistent with the Sixth Amendment, because of the tension between dooming a client to lengthy hospitalization and allowing an incompetent client to stand trial. The panel observed that Quintero failed to allege or demonstrate any actual conflict of interest for her own counsel, and held that mandatory commitment under § 4241(d) does not violate the Sixth Amendment.

The panel rejected Quintero's argument that mandatory confinement of incompetent defendants pursuant to § 4241(d) violates the Eighth Amendment's prohibition of excessive bail.

The panel declined to reach, in this criminal appeal, Quintero's arguments that mandatory commitment pursuant to § 4241(d) violates the Rehabilitation Act and the Americans with Disabilities Act.

**COUNSEL**

M. Edith Cunningham (argued) and James D. Smith, Assistant Federal Public Defenders; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Shelly K.G. Clemens (argued), Assistant United States Attorney; Christina M. Cabanillas, Deputy Appellate Chief; Michael Bailey, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

BYBEE, Circuit Judge:

Sonia Quintero was found incompetent to stand trial and was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for assessment of her potential for restoration to competency. Under Department of Justice policy, Quintero was to be hospitalized in an inpatient facility for evaluation and treatment. Quintero argues that the district court should have ordered evaluation and treatment in an outpatient facility and that her commitment violates her statutory and constitutional rights.

We affirm the district court's commitment order.

## I. PROCEDURAL HISTORY

In December 2017, Quintero was charged in the District of Arizona with conspiracy to possess with intent to distribute and possession with intent to distribute marijuana, in

violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vii). During pretrial proceedings, Quintero filed a motion to determine competency, along with a neuropsychological evaluation concluding that Quintero was incompetent to stand trial due to cognitive impairment resulting from severe traumatic brain injury and that she was not restorable to competency. The magistrate judge ordered a second psychiatric evaluation, which concluded that Quintero was incompetent to stand trial but was restorable to competence.

After an evidentiary hearing with testimony from both evaluators, the magistrate judge agreed that Quintero was not competent to stand trial, but determined that she was likely restorable to competence.[1] Quintero objected to mandatory commitment for competency restoration and instead requested outpatient treatment. However, the magistrate judge found that commitment was mandated by 18 U.S.C. § 4241(d) and ordered her committed to the custody of the Attorney General.

Quintero objected to the magistrate judge's order, but the district court overruled the objection. Quintero timely appealed.

---

[1] We note that the second half of the magistrate judge's finding exceeded the scope of § 4241(d), which only authorizes the court to determine whether the defendant is suffering from a mental disease or defect that renders him incompetent to stand trial, not whether the defendant is restorable to competency at that point in the proceedings. This extraneous finding does not affect our analysis here.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 and pursuant to the collateral order doctrine.  *United States v. Friedman*, 366 F.3d 975, 980 (9th Cir. 2004).  We review challenges to the constitutionality of a statute and questions of statutory construction de novo.  *United States v. Strong*, 489 F.3d 1055, 1060 (9th Cir. 2007); *United States v. Kowalczyk*, 805 F.3d 847, 856 (9th Cir. 2015).

## III. DISCUSSION

The Insanity Defense Reform Act (IDRA), 18 U.S.C. §§ 17, 4241–47, governs pretrial competency evaluation and restoration.  Section 4241 provides in relevant part:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility–
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future

he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until–

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

18 U.S.C. § 4241(d).

Quintero raises seven distinct challenges to her mandatory inpatient commitment under § 4241(d). She argues: (1) § 4241(d) grants the district court discretion to order a specific form of treatment, and the policies of the Attorney General and Bureau of Prisons (BOP) violate the Constitution; mandatory commitment violates (2) due process, (3) equal protection, (4) fundamental fairness, (5) the Sixth Amendment, and (6) the Eighth Amendment; and (7) mandatory commitment discriminates on the basis of disability in violation of the Rehabilitation Act and the Americans with Disabilities Act. None of these arguments is persuasive.

A. *Statutory Construction*

   1.   District Court Discretion under 18 U.S.C. § 4241

   Quintero argues that § 4241(d) grants the district court discretion to order outpatient competency restoration assessment and treatment.  This contention is meritless.  The statute is clear that upon finding a defendant mentally incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General" and that "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility."  18 U.S.C. § 4241(d); *see Strong*, 489 F.3d at 1057 (holding that mandatory commitment under § 4241(d) does not violate due process). The district court's responsibility is to make the appropriate determination that the defendant is mentally incompetent. The court has no role in determining the "suitable facility."

   Other provisions of the IDRA support this construction of § 4241(d).   For an initial psychological evaluation of a pretrial defendant—the step before commitment for competency restoration evaluation—Congress employed almost identical language to § 4241(d), except that it used the permissive verb "may" in § 4247(b).   *See* 18 U.S.C. § 4247(b) ("[T]he court *may* commit the person to be examined for a reasonable period . . . to the custody of the Attorney General for placement in a suitable facility.") (emphasis added)).   And the IDRA provides that upon restoration of competency, "the court *shall* order his immediate discharge from the facility in which he is hospitalized."  *Id.* § 4241(e) (emphasis added).  In order for Quintero's proposed reading of § 4241(d)—that "shall" means "may"—to be consistent, we would have to read § 4241(e) to be permissive as well, a reading we are confident

Quintero would not support. If there is discretion here, it rests with the Attorney General, as elsewhere the IDRA provides that the Attorney General "shall . . . consider the suitability of the facility's rehabilitation programs in meeting the needs of the person" and "may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody." *Id.* § 4247(i)(A), (C).

Quintero attempts to draw inferences from definitions of "custody" and "hospitalize" in other statutes. We need not consider these, because any such inferences are irrelevant where, as here, the language of the statute is unambiguous. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("[W]here the statutory language provides a clear answer, [the inquiry] ends there . . . .").

We hold that § 4241(d) mandates that district courts commit mentally incompetent defendants to the custody of the Attorney General for treatment, without discretion for the court to order a particular treatment setting.

2. Attorney General and Bureau of Prison Policies

Quintero next asserts that under Attorney General and Bureau of Prison (BOP) policies,[2] defendants are

---

[2] The BOP policies referenced by Quintero are quite general. "'[H]ospitalization in a suitable facility' includes the [BOP's] designation of inmates to medical referral centers or correctional institutions that provide the required care or treatment." 28 C.F.R. § 549.41; *see also* BOP Program Statement P5070.12, at 6–7 (Apr. 16, 2008) ("[I]nmates requiring hospitalization by statute . . . will be designated to a Medical Referral Center.").

automatically hospitalized and that this contravenes her construction of the statute in violation of the Take Care Clause of Article II and general separation of powers principles. *See* U.S. Const. art. II, § 3. Quintero offers no particular assessment of the Take Care Clause or the separation of powers. Rather, she asserts that the phrase "as is necessary" in § 4241(d)(1) requires the Attorney General to consider the need for hospitalization to achieve competency restoration. Because, in her view, the policies are inconsistent with the statute, Quintero argues that the Attorney General and BOP have failed to take care that the statute be faithfully executed. We find no merit in these arguments.

Section 4241(d) grants the Attorney General the discretion to "hospitalize" the defendant for treatment in a "suitable facility." The IDRA defines "suitable facility" as treatment in a "facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." *Id.* § 4247(a)(2). The statute does not enjoin the Attorney General to choose the least restrictive treatment, a judgment that would constrain the Attorney General's options and potentially open this process to endless litigation over the range of appropriate restorative medical treatments.

Quintero also points to the phrase "as is necessary" in § 4241(d)(1) as constraining the Attorney General's choice of treatment. This misreads the statute. Section 4241(d)(1) instructs the Attorney General to hospitalize a mentally incompetent defendant "in a suitable facility" "for such a reasonable period of time, not to exceed four months, *as is necessary* to determine whether there is a substantial probability that in the foreseeable future he will attain the

capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1) (emphasis added). The phrase "as is necessary" modifies "reasonable period of time," not "suitable facility." It is a temporal limitation, not a mandate to consider the necessity of inpatient treatment.

The history of the IDRA supports this conclusion. Congress enacted § 4241(d) in response to the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715 (1972). Indiana's incompetency statute authorized indefinite commitment for mentally incompetent defendants. The Supreme Court held that a defendant "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [] capacity in the foreseeable future." *Id.* at 738. The temporal limitation Congress added to § 4241(d) remedied this defect in the federal statute. *See Strong*, 489 F.3d at 1061 ("[Section] 4241(d) was enacted in response to the *Jackson* decision and echoed *Jackson*'s language."). The "as is necessary" language instructs the Attorney General to give individualized consideration of the period of time—with an outer limit—necessary to assess and restore competency. Nothing in the Attorney General's and BOP's policies contravenes § 4241(d).

B. *Due Process*

Quintero argues that mandatory commitment under 18 U.S.C. § 4241(d) raises both substantive and procedural due process concerns. The Due Process Clause of the Fifth Amendment mandates that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause "protects individuals against two types of government action":

violations of substantive due process and procedural due process. *United States v. Salerno*, 481 U.S. 739, 746 (1987). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Id.* (internal quotation marks and citations omitted). Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action "be implemented in a fair manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Neither of Quintero's due process challenges has merit.

### 1.  Substantive Due Process

Quintero first argues that mandatory commitment under § 4241(d) violates her substantive due process rights. She claims freedom from confinement before trial is a "fundamental right" and that we must apply heightened scrutiny to the custodial provisions of § 4241(d). *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014) (en banc).

Pretrial commitment is "a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). In *Jackson v. Indiana*, the Supreme Court addressed the due process requirements for pretrial commitment for competency restoration. 406 U.S. at 738. Indiana—as did the United States and other states—provided that mentally incompetent defendants could be confined indefinitely. *Id.* at 731–36. The Supreme Court held the Indiana statute was unconstitutional insofar as it provided for indefinite commitment without "the customary civil commitment proceeding that would be required to commit indefinitely any other citizen." *Id.* at 738. The Court

held that a person hospitalized for competency restoration "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future" and that "continued commitment must be justified by progress toward" the goal of competency restoration. *Id.* at 738.

As we previously noted, 18 U.S.C. § 4241(d) was added to conform to the Court's holding in *Jackson*. *Strong*, 489 F.3d at 1061. In *Strong*, we held that § 4241(d) complies with the requirements of due process under the framework set out in *Jackson.* We began from the premise that "the right to be free from Government confinement . . . is the very essence of the liberty protected by the Due Process Clause" and that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 1060 (quoting *Reno v. Flores*, 507 U.S. 292, 346 (1993), and *Salerno*, 481 U.S. at 755). First, we found that "the duration of the defendant's commitment" under § 4241 is "inherently limited" to "such a reasonable period of time, not to exceed four months, as is necessary'" to determine the likelihood of competency restoration. *Id.* at 1061–62 (quoting § 4241(d)). Second, we held that in determining whether a "defendant is susceptible to timely restoration," there was a "close[] . . . fit between the commitment and the purpose for which such commitment is designed." *Id.* at 1061. We noted that "[s]uch a determination requires a more careful and accurate diagnosis than the brief interviews and review of medical records that tend to characterize the initial competency proceeding." *Id.* at 1062 (internal quotation marks and

citation omitted).  We thus rejected Strong's argument that § 4241(d) violated his substantive due process rights.[3]

Quintero acknowledges our decision in *Strong* but argues that, after our en banc decision in *Lopez-Valenzuela*, 770 F.3d 772, "automatic detention for competency restoration under § 4241(d) violates due process" because "the statute employs an irrebuttable presumption that detention is necessary." According to Quintero, *Strong* is thus no longer binding authority.  We are not persuaded.  In *Lopez-Valenzuela* we addressed an Arizona statute that categorically denied bail for aliens present in the United States illegally who were charged with a felony offense.  770 F.3d at 775.  Applying heightened scrutiny, we held the statute unconstitutional.  *Id.* at 780–81 & n.3.  *Lopez-Valenzuela* concerned the liberty interests of a class of defendants who were categorically denied bail that, but for their alien status, would have been routinely afforded to them.  We fail to see how *Lopez-Valenzuela* has undermined our decision in *Strong*.  Section 4241(d) only authorizes "hospitaliz[ation] . . . in a suitable facility" for a limited purpose and for "a reasonable period of time." 18 U.S.C. § 4241(d)(1).  Unlike the statute at issue in *Lopez-Valenzuela*, persons thought to be mentally incompetent are entitled to a hearing and an individualized determination of their competence.  Their custody is only temporary and, if

---

[3] We also noted that at least three circuits had rejected similar challenges.  *Strong*, 489 F.3d at 1063 (citing *United States v. Filippi*, 211 F.3d 649, 651–52 (1st Cir. 2000); *United States v. Donofrio*, 896 F.2d 1301,1303 (11th Cir. 1990); *United States v. Shawar*, 865 F.2d 856, 864 (7th Cir. 1989)).  Since *Strong*, several other circuits have upheld § 4241 against various challenges.  *See United States v. McKown*, 930 F.3d 721, 728–30 (5th Cir. 2019); *United States v. Dalasta*, 856 F.3d 549, 554–55 (8th Cir. 2017); United *States v. Magassouba*, 544 F.3d 387, 406–08 (2d Cir. 2008); *United States v. Ferro*, 321 F.3d 756, 761–62 (8th Cir. 2003).

treatment is not successful, may lead to their civil commitment or even to their release. *See Jackson*, 406 U.S. at 738.

Quintero also argues that *Strong* is inconsistent with the Supreme Court's decisions in *Salerno*, 481 U.S. 739, and *Sell v. United States*, 539 U.S. 166 (2003).**[4]** Both of those decisions were issued well before our opinion in *Strong*, and *Strong* quoted *Salerno*. *See Strong*, 489 F.3d at 1060. Accordingly, they are not *intervening* Supreme Court authority on which we may rely to overturn the judgment of a prior panel of this court. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) ("[W]here the reasoning

---

**[4]** Quintero appears to argue that these cases, together with *Lopez-Valenzuela*, require "proof by clear and convincing evidence that no less restrictive alternatives than confinement could reasonably address the government's interest." The statement comes without citation, so we are unsure of its origin. To be sure, the phrase "clear and convincing evidence" appears in *Salerno*, but that is the level of proof required by the Bail Reform Act, 18 U.S.C. § 3142(f), which was at issue in *Salerno*. *See, e.g.*, *Salerno*, 481 U.S. at 742, 750–52; *see also Lopez-Valenzuela*, 770 F.3d at 779–80, 782, 785 (referring, in each instance, to *Salerno*). We cannot locate the phrase "no less restrictive alternative" (or some variant) in any of these cases.

In any event, in *Strong* we did not set forth a formal standard of scrutiny. We did use the phrase "reasonable relation" because that was the standard the Court used in *Jackson*. *See Strong*, 489 F.3d at 1061 (quoting *Jackson*, 406 U.S. at 738). Elsewhere we commented on the "the closeness of the fit" in § 4241(d) "between the commitment and the purpose for which such commitment is designed." *Id.*

We take very seriously our obligation to examine our prior decisions in light of subsequent developments; we do not lightly overturn one of our prior decisions. Quintero falls well short of persuading us that there are grounds to do so in this case.

or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority . . . ."). Quintero's argument is simply an effort to re-argue *Strong*, but we are bound by it. If Quintero believes *Strong* is wrongly decided, her remedy lies in rehearing en banc or certiorari.

In any event, both of those cases dealt with very different circumstances. *Salerno* rejected a substantive due process challenge to a Bail Reform Act provision allowing for case-by-case pretrial detention on the basis of future dangerousness. 481 U.S. at 746–52. In the same vein, *Sell* concerned forcible medication to restore competence for trial, which the Supreme Court subjects to a higher standard of review due to defendants' distinct liberty interest in rejecting invasive medical treatment. 539 U.S. at 177–78, 180–81; *see United States v. Loughner*, 672 F.3d 731, 747–52, 765 (9th Cir. 2012) (discussing *Sell* and distinguishing between commitment for competency restoration under § 4241(d) and involuntary medication orders).

Quintero also argues that we should overturn *Strong* because it was based on the "faulty premise . . . that inpatient confinement is always necessary to achieve the government's interests" and "[r]ecent empirical evidence refutes the premise underlying *Strong*." We see no such "premise" in our decision. If there is a premise to be had here, it is Congress's. Nevertheless, we see no impediment in the statute to the Attorney General—in his discretion, not ours—choosing outpatient treatment as the "suitable facility." 18 U.S.C. § 4241(d); *see id.* § 4247(a)(2) (defining "suitable facility" as "a facility that is suitable to provide care or treatment given the nature of the offense and the

characteristics of the defendant"). Even if there is recent empirical evidence confirming the effectiveness of outpatient treatment, we cannot revisit *Strong.*

Finally, Quintero points us to a recent decision of the Georgia Supreme Court. *See Carr v. State*, 815 S.E.2d 903, 914–16 (Ga. 2018). Even if we thought that decision persuasive, we are not bound by state court decisions. We are bound by our decision in *Strong*, and reaffirm that § 4241(d) does not violate Quintero's substantive due process rights.

### 2. Procedural Due Process

Quintero argues that mandatory commitment under § 4241(d) violates procedural due process because the statute does not provide a sufficient adversarial hearing prior to commitment. Relying on *Vitek v. Jones*, 445 U.S. 480 (1980), she asserts that a pre-deprivation adversarial hearing specifically addressing the necessity of confinement is warranted and that the court must make a finding that outpatient programs are inadequate because § 4241(d) creates an expectation that a defendant will not be committed to an inpatient facility unless it is both "suitable and necessary." We hold that § 4241(d) provides sufficient procedural safeguards prior to commitment, and thus her commitment does not violate procedural due process.

A "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington*, 441 U.S. at 425. "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746. The constitutional process due depends upon "the extent to which

[the individual] may be condemned to suffer grievous loss, and depends upon whether the [individual's] interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970) (internal quotation marks and citation omitted); *see Mathews*, 424 U.S. at 332.

To determine whether a pre-deprivation procedure comports with due process, we consider: "(1) the private interest affected; (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards; and (3) the government's interest including the function involved and the burdens that additional procedural requirements would place on the state." *Hickey v. Morris*, 722 F.2d 543, 548 (9th Cir. 1983) (citing *Mathews*, 424 U.S. at 335).

We hold that § 4241(d) appropriately balances those interests. First, we recognize that a pretrial defendant has a significant liberty interest in avoiding pretrial confinement, including civil commitment. *See Addington*, 441 U.S. at 425–26; *see also Humphrey v. Cady*, 405 U.S. 504, 509 (1972). Even if not a punitive measure, commitment for evaluation and treatment of mental conditions is a physical restraint on liberty and may come with its own social stigma. Indeed, the Court has held that even a convicted inmate is entitled to some process before he may be transferred to a mental facility, because such hospitalization is "qualitatively different from the punishment characteristically suffered by a person convicted of a crime." *Vitek* , 445 U.S. at 493.

Second, the government has a strong interest in these proceedings. It has charged a defendant such as Quintero with violation of federal law. It has an obligation to try a

defendant expeditiously, *see* U.S. Const. amend. VI; 18 U.S.C. §§ 3161–3174 (Speedy Trial Act), or release the defendant. It may not try a defendant who cannot aid in his own defense, *see Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United States*, 350 U.S. 961 (1956)), and the diagnosis may even have a bearing on any affirmative defense of mental impairment at the time of the crime. If the defendant cannot be tried because he is unable to aid counsel in his defense and he cannot be restored to health, the government may have to release the defendant. *See Jackson*, 406 U.S. at 738. But before the government so concludes, it has an additional obligation to ensure that the defendant is not a danger to himself or the public and may seek civil commitment to protect the public. *See id.* at 733.

Given the strong interests of both the defendant and the government, "[t]he final, and perhaps most important, *Mathews* factor is the risk of erroneous deprivation and the probable value of additional procedural safeguards." *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1194 (9th Cir. 2009), *rev'd in part on other grounds*, 562 U.S. 29 (2010). This prong requires that we examine the procedures provided in the IDRA and "ask 'considering the current process, what is the chance the [government] will make a mistake?'" *Id.* We think the risk of error is low. Section 4241 provides extensive safeguards to ensure that commitment is justified. When questions first arise regarding competency, the court must order a hearing "if there is reasonable cause to believe that the defendant may presently be" incompetent to stand trial. 18 U.S.C. § 4241(a). Prior to the hearing, the court has discretion to order psychiatric or psychological examinations of the defendant and that such reports be filed with the court. *Id.* § 4241(b). These exams must be conducted, and a report prepared, by a licensed or

certified psychiatrist or psychologist, and defendants may request examiners in addition to those selected by the court. *Id.* § 4247(b). The content of the report is specified by the statute and must include a patient history and present symptoms; a description of the tests that were employed; the examining psychiatrist's or psychologist's diagnosis and prognosis; and a conclusion as to whether the person is suffering from mental impairment that renders him incompetent to assist in his defense. *Id.* § 4247(c). The report must be followed by a hearing at which the defendant is required to be represented by counsel, and for which counsel will be appointed for him "if he is financially unable to obtain adequate representation." *Id.* § 4247(d). At the hearing, the defendant must be afforded the "opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." *Id.* § 4241(c), 4727(d). After the hearing, the court must find by a preponderance of the evidence that the defendant is mentally incompetent to stand trial before committing the defendant to the custody of the Attorney General. *Id.* § 4241(d).

As we have previously stated, commitment to the Attorney General for competency evaluation is durationally limited to a "reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [the defendant] will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). Hospitalization may be extended for competency restoration "for an additional reasonable period of time" "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward" or until the charges are dropped. *Id.*

§ 4241(d)(2). The defendant may "at any time during [his] commitment" request a further hearing to determine if he should be discharged. *Id.* § 4247(h). Finally, 18 U.S.C. § 4241(e) provides additional safeguards for release upon a restoration of competency.

As we consider these procedural safeguards Congress has put in place, we are hard pressed to understand what further procedures are required to reduce the risk of error. A hearing, attended by counsel, with an opportunity to testify, to present evidence, to subpoena witnesses, to confront and cross-examine witnesses, and to seek reconsideration of an adverse decision is the core of American due process. *See Vitek*, 445 U.S. at 494–95. Nevertheless, Quintero argues that she is entitled to a "predeprivation process" to decide if outpatient treatment is suitable. This is not properly a procedural due process argument, but a variation on her substantive due process argument, which we have rejected. Congress has provided ample process for determining whether a defendant is mentally incompetent and likely to respond to treatment. The choice of a facility is within Congress's prerogative.

We have little difficulty holding that mandatory commitment under § 4241(d) comports with the requirements of procedural due process.

C. *Equal Protection*

Quintero raises three arguments under the equal protection component of the Due Process Clause of the Fifth Amendment. We examine equal protection claims under a two-step inquiry, first inquiring whether the petitioner's class is similarly situated to the claimed disparate group and, if so, whether the classification is justified. *Pimentel v. Dreyfus*,

670 F.3d 1096, 1106 (9th Cir. 2012) (per curiam). We will consider each argument in turn.

Quintero first argues that § 4241(d) denies her equal protection of the laws because it imposes a less stringent standard for confinement than the Bail Reform Act, 18 U.S.C. § 3142(e), which governs release or detention of pretrial defendants. The Bail Reform Act provides in relevant part:

> If, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e)(1). Quintero argues that, like defendants denied bail, she has been confined but, unlike defendants denied bail, she has not been found to be dangerous. We think it obvious that the two situations are not comparable for equal protection purposes. The purposes of confinement under each statute are not the same: Section 3142(e) ensures that the defendant appears at trial and does not endanger the community, while § 4241(d) aims to assess the potential to restore a defendant to competency to stand trial. The government has different interests for confinement of each group, and thus these two classes of defendants may be subject to different standards related to those interests.

Quintero also argues that mentally incompetent pretrial defendants are subject to less stringent standards for commitment than convicted persons who, having served their sentence, are going to be committed civilly. *See* 18 U.S.C.

§ 4246. Section 4246 governs hospitalization of three classes of mentally impaired persons: (1) convicted persons whose sentence is about to expire, (2) pretrial defendants committed to the custody of the Attorney General under § 4241(d), and (3) pretrial defendants committed under § 4241(d) whose charges have been dismissed because of their mental condition. *Id.* § 4246(a). Section 4246(d) provides:

> If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General.

Again here, the purposes of commitment for persons subject to each statute differ: Section 4246 is about protecting the community from a dangerous and mentally ill defendant who is about to be released, while § 4241(d) aims to ensure an accurate assessment of competency before trial. Including an assessment of danger in § 4246 directly addresses the statute's purpose of protecting the community, but it serves no purpose in the context of a competency assessment. Section 4246 itself recognizes that persons subject to these statutes are not similarly situated. Defendants committed pursuant to § 4241(d) may be subject to § 4246 in some instances because, although not all defendants committed pursuant to § 4241(d) are dangerous, those found dangerous—and who could be released after the durational limit or through the other safety valves—are subject to further hospitalization under § 4246. The consequences also differ: Section 4246 allows for potentially indefinite confinement of

a defendant who has already served her sentence, while § 4241(d) allows for confinement before trial for only a "reasonable period of time." The stricter standard in § 4246 makes sense where the period of confinement is not so limited and discharge is conditioned on a finding that the person is no longer a danger. *Id.* § 4246(e).

The Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715, reinforces our conclusion. In that case Jackson, who was deaf, mute, and mentally handicapped, was accused of robbery. Before he could be tried, the court found him mentally incompetent to aid in his defense and committed him to the custody of the Indiana Department of Mental Health until he could be certified as sane. 406 U.S. at 717–18. Because Jackson likely could not be rehabilitated, it was effectively a life sentence. *See id.* at 716. Although Jackson had not been convicted of any crime, the standards for his commitment and the conditions for his release were stricter than for similarly situated persons in the general population. The Court concluded that Indiana's scheme violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 729–30.

Section 4241(d) does not present the same concerns as the Indiana statute at issue in *Jackson*. Section 4241(d) does not automatically condemn a mentally incompetent defendant to potentially permanent commitment. Instead, the period of hospitalization under § 4241(d) is statutorily limited to four months for assessment and an additional reasonable period of time if there is a substantial probability that the defendant can be restored to competence. Release is also mandated where, at the end of the time period, a "defendant's mental condition has not so improved as to permit the proceedings to go forward." 18 U.S.C. § 4241(d). Any further restraint on

Quintero's liberty, such as civil commitment, would be subject to other statutory and constitutional constraints. Section 4241(d) thus avoids *Jackson*'s concerns with time limits and release mechanisms.

Finally, Quintero argues that mandatory confinement under § 4241(d) violates her right to equal protection because federal pretrial defendants are subject to a less stringent commitment standard than Arizona state defendants. *See* Ariz. Rev. Stat. § 13-4512(D) (requiring courts to consider a variety of factors and select the "least restrictive treatment alternative" for competency restoration). Quintero acknowledges that there is no equal protection violation where the federal government treats defendants charged with federal crimes differently than a state treats defendants charged with state crimes. *United States v. Antelope*, 430 U.S. 641, 649 (1977) ("Under our federal system, the National Government does not violate equal protection when its own body of law is evenhanded, regardless of the laws of States with respect to the same subject matter." (footnotes omitted)). Nothing else needs be said regarding our dual sovereignty. *Antelope* supplies a complete answer to Quintero's argument.

D. *Fundamental Fairness*

Quintero next raises a novel claim that mandatory commitment violates fundamental fairness and a hybrid due process/equal protection right recognized by the Supreme Court in *Obergefell v. Hodges*, 576 U.S. 644 (2015), and *Bearden v. Georgia*, 461 U.S. 660 (1983). In *Obergefell* the Court observed that "[t]he Due Process Clause and the Equal Protection Clause" "set forth independent principles," although they "are connected in a profound way." 576 U.S.

at 672. The Court in *Bearden* noted that in cases concerning indigent defendants, "[d]ue process and equal protection principles converge," but that most decisions "have rested on an equal protection framework." 461 U.S. at 665.

We need not parse these cases further. In both *Obergefell* and *Bearden*, the Court considered the convergence of due process and equal protection rights the Court had previously recognized. Here, Quintero argues that we should find a synergy in these clauses that is greater than either of the clauses individually. But in this case, we have *rejected* Quintero's due process and equal protection clause arguments. We decline to create a new right here that is unsupported by either the Due Process Clause or the equal protection component of the Due Process Clause.

E.  *The Sixth Amendment*

Quintero raises a Sixth Amendment challenge to § 4241(d) for the first time on appeal. She argues only that § 4241(d) *could* create a conflict of interest for counsel in some cases, which would be inconsistent with the Sixth Amendment. She does not argue that her own counsel was faced with any conflict here. At base, her argument is that mandatory commitment under § 4241(d) "makes effective, conflict-free representation impossible in *some* circumstances" because defense counsel will face the tension between "[d]ooming" a client to lengthy hospitalization and allowing an incompetent client to stand trial. Because Quintero did not raise a Sixth Amendment claim before the district court, we review her claim for plain error. *United States v. Olano*, 507 U.S. 725, 730–36 (1993); *see* Fed. R. Crim. P. 52(b). To succeed, she must demonstrate that

(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [her] substantial rights, which in the ordinary case means it affected the outcome of the district-court proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017) (citation omitted).

The Sixth Amendment guarantees defendants the right to "effective assistance of counsel," which includes "a duty of loyalty" and "a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 686, 688 (1984). However, "a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). The Sixth Amendment protects defendants only from *actual* conflicts of interest—not every potential conflict that could arise. *Wheat v. United States*, 486 U.S. 153, 159–60 (1988). Thus, mere allegations of a potential conflict of interest are insufficient to demonstrate a violation of the Sixth Amendment. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

At the outset, Quintero's failure to allege or demonstrate any actual conflict of interest for her counsel dooms her argument. Quintero has not shown—or even alleged—an actual conflict of interest in her counsel's representation. Quintero initiated the competency proceedings here, and she does not argue that her counsel filed the motion for competency determination against her wishes. Mandatory

commitment does not violate her Sixth Amendment right to conflict-free representation.

In any event, § 4241(d) does not violate the Sixth Amendment. Defense counsel has "a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired." *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003). A failure to raise competency with the court may deprive a defendant of effective assistance of counsel. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011). But the possibility that counsel's client may have to be hospitalized to verify her mental competence does not present a real conflict of duties: temporary confinement is a consequence of counsel's duty to raise the mental stability of his client. Moreover, not every dilemma presents a conflict of constitutional dimensions. Counsel often faces difficult and consequential choices in determining trial strategy: whether to cross-examine certain witnesses; whether to raise objections in front of the jury; whether to raise certain affirmative defenses, including an insanity defense; and whether to mount a defense at all, or rest on the government's burden of proof. The fact that counsel has to make hard choices, and may be subject to second-guessing by post-conviction counsel, is not evidence of a conflict created by the law. Although an increased sentence resulting from deficient performance by counsel prejudices a defendant and violates the Sixth Amendment, *Glover v. United States*, 531 U.S. 198, 200 (2001), temporary pretrial hospitalization to assess competency is not a sentence. Pretrial detention provisions are regulatory, not punitive. *Salerno*, 481 U.S. at 747 (finding that pretrial detention under the Bail Reform Act was regulatory, not punitive).

We hold that mandatory commitment under § 4241(d) does not violate the Sixth Amendment.

F.  *The Eighth Amendment*

Quintero next argues that mandatory confinement of incompetent defendants pursuant to § 4241(d) violates the Eighth Amendment's prohibition of "[e]xcessive bail." U.S. Const. amend. VIII.  We are unsure why the Excessive Bail Clause is even relevant here.  Quintero does not seek bail in this proceeding.  We think that Quintero has attempted to draw a principle from that Clause that there must be a "weighing of individual factors" and a "constitutional presumption in favor of release."  Like her other constitutional claims, Quintero's excessive bail argument falls short.

The Bail Reform Act "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  So "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, . . . the Eighth Amendment does not require release on bail." *Salerno*, 481 U.S. at 754–55.

The government has a compelling interest in ensuring competence for trial.  It has both a "substantial interest in timely prosecution" and a "concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one." *Sell*, 539 U.S. at 180.  The government may not convict a mentally incompetent defendant, *Robinson*, 383 U.S. at 378, and it bears the burden of demonstrating the

defendant's competency, *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991). Even if we thought the Excessive Bail Clause had some bearing on our decision, these are not sufficient reasons for disapproving the scheme laid out in the IDRA.

G. *Disability Law*

In her final challenge, Quintero argues that mandatory commitment pursuant to § 4241(d) violates the Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with Disabilities Act, 42 U.S.C. § 12132, both of which prohibit discrimination on the basis of disability.[5] She further claims that mandatory commitment violates the proscription against unjustified

---

[5] The Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a). The Department of Justice's (DOJ) Rehabilitation Act implementing regulations provide that DOJ "shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 39.130(d). These implementing regulations apply "to all programs or activities conducted by" DOJ. 28 C.F.R. § 39.102.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

isolation of the disabled set out by the Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999). Quintero cites no authority which permits her to assert these civil claims within the context of her interlocutory criminal appeal. If Quintero wishes to assert and develop these legal theories, she must do so in the context of a civil cause of action. We therefore decline to reach the merits of these arguments here.

## IV.  CONCLUSION

The district court here properly found Quintero incompetent to stand trial and ordered her committed to the custody of the Attorney General for inpatient assessment and treatment. The district court did not have discretion to order alternative outpatient evaluation. We affirm the district court's commitment order.

**ORDER AFFIRMED.**