FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 22 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CRAIG THOMAS DONNELLY, Defendant-Appellant. | No. 22-30081 D.C. Nos. 3:21-cr-00232-SI-1 3:21-cr-00232-SI OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted July 5, 2022
Portland, Oregon

Before:  Paul J. Watford, Ryan D. Nelson, and Kenneth K. Lee, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Watford

PER CURIAM:

Craig Donnelly is charged with three counts of stalking, cyberstalking, and interstate violation of a protective order.  The district court ordered him detained without bail under 18 U.S.C. § 3142 as both a danger to the community and a flight risk.  He has been held since his initial appearance in August 2021 at the federal detention center in Sheridan, Oregon.

On November 18, 2021, after ordering a psychological evaluation and conducting a hearing to evaluate Donnelly's competency to stand trial, the district court found that Donnelly "is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is presently unable to assist properly in his defense of this criminal matter." As required under the Insanity Defense Reform Act (IDRA), the district court committed Donnelly to the custody of the Attorney General. *See* 18 U.S.C. § 4241.

The IDRA directs the Attorney General to "hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). The Attorney General has delegated responsibility for complying with this requirement to the Bureau of Prisons (BOP). The BOP, however, is currently experiencing a significant backlog in placing defendants in suitable facilities for treatment, as § 4241(d) requires. The lack of available bed space has led to long delays between the time a district court finds a defendant not competent to stand trial and the defendant's hospitalization for treatment and evaluation.

Four months after the district court issued its order remanding him to the Attorney General's custody, Donnelly remained detained in Oregon awaiting

hospitalization. He was informed that he would likely have to wait another four months—until July 2022—before a bed would become available.

In March 2022, Donnelly filed the motion giving rise to this appeal, which asked the district court to dismiss the indictment. Donnelly argued that the four-month-plus delay in placing him in a suitable hospital facility violated his rights under 18 U.S.C. § 4241(d) and the Fifth Amendment's Due Process Clause. As the basis for his statutory argument, Donnelly contended that the four-month time limit imposed by § 4241(d)(1) begins to run when the district court orders a defendant committed to the custody of the Attorney General for placement in a suitable hospital facility. Under that reading, Donnelly's rights have been violated because he has already been in the Attorney General's custody for more than four months, and he still has not been hospitalized for treatment.

On May 11, 2022, the district court denied Donnelly's motion to dismiss the indictment. It rejected Donnelly's statutory argument on the ground that § 4241(d)'s four-month time limit begins to run only upon the defendant's hospitalization, not upon his commitment to the Attorney General's custody. The district court reasoned that the four-month time limit had not yet begun to run, much less been violated, because Donnelly had not yet been hospitalized. The court rejected Donnelly's due process argument on the ground that he had not shown the kind of "grossly shocking and outrageous" government misconduct

necessary to warrant dismissal of the indictment. *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993).

Donnelly filed an interlocutory appeal challenging the denial of his motion to dismiss the indictment. We have jurisdiction to hear his appeal under the collateral order doctrine, as the district court's order conclusively resolves issues separate from the underlying merits of the criminal charges against Donnelly (i.e., Donnelly's continued detention) and would be effectively unreviewable on appeal from a final judgment. *See Sell v. United States*, 539 U.S. 166, 176–77 (2003).

We agree with the district court's decision to deny Donnelly's motion, although our reasoning differs in certain respects and ultimately requires that we vacate the order below. The IDRA establishes a three-step process when a criminal defendant's competency to stand trial is questioned. First, it provides that, "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant," either party may move for a hearing to determine the defendant's competency. 18 U.S.C. § 4241(a). The court holds a hearing on the motion and makes a competency finding. *Id.* § 4241(c), (d). If the court finds that the defendant is incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General." *Id.* § 4241(d). Second, "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine

whether there is a substantial probability" that the defendant will be restored to competency in the foreseeable future. *Id.* § 4241(d)(1). Finally, after the initial evaluation, continued hospitalization is permitted "for an additional reasonable period of time" until the defendant's mental condition has improved or the pending charges are "disposed of according to law." *Id.* § 4241(d)(2).

The IDRA thus imposes two mandatory duties following an incompetency finding. First, the district court "shall commit the defendant to the custody of the Attorney General." *Id.* § 4241(d). Second, "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months." *Id.* § 4241(d)(1). We think the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized. Even so, that does not establish whether the statute permits a delay between commitment and hospitalization. If hospitalization must occur immediately upon commitment, the four-month clock starts when the defendant is committed. But if the statute allows some amount of time between commitment and hospitalization, the clock doesn't start until later. [1]

---

[1] Language in two of our prior cases upholding § 4241(d) against due process challenges suggested that the four-month deadline includes the entire period of commitment. *See United States v. Quintero*, 995 F.3d 1044, 1052 (9th Cir. 2021); *United States v. Strong*, 489 F.3d 1055, 1061–62 (9th Cir. 2007). But neither case

We need not decide whether the statute allows some amount of pre-hospitalization confinement because the delay here falls outside any constitutional reading of the statute.  Congress enacted § 4241 as part of a broad overhaul of the provisions governing pre-trial competency determinations following the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715 (1972).  *See United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007).  In *Jackson*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits a State from confining a defendant for an indefinite period simply because he is not competent to stand trial.  406 U.S. at 720.  That case involved an Indiana defendant who was committed to the State's Department of Mental Health "until such time as that Department should certify . . . that the defendant is sane," despite his attorney's representation that restoration was highly unlikely.  *Id.* at 719 (internal quotation marks omitted).  By the time his case reached the Supreme Court, Jackson had been confined for three-and-a-half years without any indication that he could be restored to competency.  *Id.* at 738–39.  The Court held that such indefinite confinement violated the defendant's due process rights.  "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  *Id.* at 738.  Thus, a person

---

squarely presented the question of when the statute's four-month period begins, so neither is binding on us here.

committed "solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.*

The Constitution does not permit any portion of a defendant's commitment under 18 U.S.C. § 4241(d) to last indefinitely. Although Congress did not provide a specific time limit for a pre-hospitalization commitment period, *Jackson* requires the duration of any such commitment to "bear some reasonable relation" to its purpose. *Id.* To determine the permitted length of the pre-hospitalization commitment period, then, we must ask what purpose that period serves.

We find our answer in the text of the statute. Upon a defendant's commitment, the Attorney General must identify a "suitable facility" in which to hospitalize a defendant based on the particular rehabilitative needs of that individual. *See* 18 U.S.C. §§ 4241(d), 4247. As we recently recognized, § 4247 endows the Attorney General with considerable discretion in making that determination. *See United States v. Quintero*, 995 F.3d 1044, 1050–51 (9th Cir. 2021). Assuming that decision requires some amount of time, the two-step structure of § 4241(d)—commitment to the custody of the Attorney General, followed by a period of hospitalization—might require a pre-hospitalization commitment period to allow the Attorney General time to identify a suitable

facility and arrange for the defendant's transportation to that facility. But to abide by *Jackson*, the duration of the pre-hospitalization commitment period must be limited to the time reasonably required to accomplish those tasks.

At the time the district court ruled on Donnelly's motion, he had already been held in the custody of the Attorney General for nearly six months. We do not think *Jackson*'s "reasonable relation" requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself. Thus, we have little difficulty concluding that whatever the outer limit of § 4241(d), the length of Donnelly's confinement exceeds it. That fact is even more evident today, as Donnelly has now been held in the pre-hospitalization custody of the Attorney General for more than eight months—twice as long as the maximum period Congress authorized for the entire length of a defendant's hospitalization.

Having found a violation of the statute, we must next decide whether the appropriate remedy for that violation is dismissal of the indictment, as Donnelly has requested. In our view, dismissal is not the appropriate remedy. Congress did not prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d), as it has, for example, in the context of violations of time limits imposed by the Speedy Trial Act. *See* 18 U.S.C. § 3162(a). That fact

alone may not be dispositive, but it does provide reason to doubt that Congress intended the extreme sanction of dismissal to follow anytime the Attorney General unreasonably delays hospitalizing a defendant whom the district court has found not competent to stand trial.[2]

To craft an appropriate remedy, we look to the interests of the parties and the relevant statutory scheme. *See Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003). In *Mink*, we addressed an analogous violation of defendants' rights under Oregon law. Like 18 U.S.C. § 4241(d), Oregon law requires trial courts to send defendants found not competent to stand trial to a state hospital for a restoration determination. Organizations representing such defendants sought class-wide relief from delays that kept their clients waiting for hospital beds for as long as five months. *Id.* at 1105–06. Because such extensive detention without hospitalization violated defendants' due process rights, we

---

[2] We reject the government's contention that Donnelly's lengthy period of pre-hospitalization commitment is essentially harmless and therefore requires no remedy. That argument assumes that a defendant who is already detained under the Bail Reform Act suffers no harm from time spent awaiting hospitalization because he would have remained in detention anyway. But the harm here arises not from the fact of detention, but rather by its extended length. However long it takes for Donnelly to be hospitalized, treated, and (if possible) restored to competency, all of that time will be in addition to the time he can be detained while awaiting trial. *See United States v. Romero*, 833 F.3d 1151, 1154 (9th Cir. 2016) (holding that the Speedy Trial Act permits exclusion of all time resulting from a district court's finding that a defendant is incompetent to stand trial). When the excluded time is unlawfully extended by an unreasonably long pre-hospitalization commitment period, that excess detention constitutes a real injury.

affirmed the district court's entry of a state-wide injunction requiring hospitalization within seven days. *Id.* at 1122–23.

Although Donnelly has not sought injunctive relief, the district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury. *See United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) (discussing the breadth of the court's supervisory powers). Ultimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay. *See Mink*, 322 F.3d at 1121–22. Doing so will allow Donnelly to receive the treatment necessary to make a restoration determination—the critical step down the path toward either restoration and trial or dismissal of the indictment and initiation of civil commitment proceedings. *See* 18 U.S.C. § 4241(d), (e). We therefore vacate the district court's order and remand with instructions to order the Attorney General to hospitalize Donnelly in a suitable facility within seven days.[3]

---

[3] We agree with the district court's determination that, even if Donnelly had established a violation of his rights under the Due Process Clause (a matter we need not resolve), dismissal of the indictment would not be warranted. Donnelly has not shown the kind of "grossly shocking and outrageous" government misconduct necessary to justify dismissal of the charges against him. *See Bundy*, 968 F.3d at 1031; *Kearns*, 5 F.3d at 1253. Indeed, the Court in *Jackson* did not order dismissal, notwithstanding that the defendant had been committed for more than three years. *Jackson*, 406 U.S. at 738.

We note in closing that nothing in our decision today forecloses the possibility that dismissal may become appropriate at a future date, either in this case or in others like it. Other defendants may be able to show that the government's unreasonable delay amounts to the kind of flagrant misconduct warranting dismissal. As to Donnelly, should the Attorney General fail to comply with the district court's order on remand, that court may consider whether such a failure—layered on top of the existing statutory violation—leaves available "no lesser remedial action" than dismissal. *Bundy*, 968 F.3d at 1031 (citation omitted).

\* \* \*

In sum, Congress requires the Attorney General to hospitalize a defendant after he is found incompetent. Whether he must do so immediately or is allowed a brief period of pre-hospitalization commitment reasonably limited to allow the Attorney General to identify a suitable facility and arrange for the defendant's transportation to that facility, the government's delay cannot exceed four months. We make no ruling as to the maximum allowable length of a pre-hospitalization commitment period, but hold that the eight months Donnelly has waited to be hospitalized in a suitable facility plainly exceeds whatever period the statute conceivably allows. In order to further Congress's directive to determine whether restoration is substantially probable while at the same time respecting Donnelly's

due process interests, we remand to the district court with instructions to order the Attorney General to hospitalize Donnelly within seven days.

**VACATED and REMANDED.**

The mandate shall issue forthwith.

*United States v. Donnelly*, No. 22-30081

WATFORD, Circuit Judge, concurring in the judgment:

I agree with my colleagues that Donnelly's prolonged wait for a hospital bed violates 18 U.S.C. § 4241(d)(1) and that an order directing his hospitalization forthwith is the appropriate remedy here. But I think Congress plainly imposed four months as the outside limit on the entire period a defendant is committed to the custody of the Attorney General for treatment and evaluation, inclusive of any pre-hospitalization delay.

Nothing in the text of § 4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of pre-hospitalization commitment subject to no statutory time constraints whatsoever, to be followed by a period of hospitalization subject to a strict four-month time constraint. The statute simply provides that upon finding the defendant not competent to stand trial, a district court "shall commit" the defendant to the custody of the Attorney General. In the same breath, the statute states that the Attorney General "shall hospitalize" the defendant for treatment and evaluation for a reasonable period of time not to exceed four months. The provision is most sensibly read as imposing an outside time limit on the entire period of commitment, from issuance of the court's commitment order to completion of the defendant's period of hospitalization. *See United States v. Carter*, 2022 WL 483636, at *5 (D.D.C. Jan.

27, 2022). That is the view reflected in the statute's legislative history, which makes no mention of two separate time periods, but instead describes a single period of "commitment under section 4241" that "may not exceed four months." S. Rep. No. 98-225, at 236 (1983); *see also United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007) (reading the statute the same way). It seems plain to me from the text and legislative history that Congress assumed a defendant would be hospitalized in short order following his commitment to the custody of the Attorney General, such that four months would afford adequate time for the entire evaluation process to be completed.

At the time it enacted § 4241(d), Congress had no reason to assume otherwise, and certainly no reason to anticipate the lengthy pre-hospitalization delays that have now become routine. True, the Attorney General must make an individualized assessment when designating a "suitable facility" for the defendant's hospitalization. 18 U.S.C. §§ 4241(d), 4247(i)(C). But that is a process that can reasonably be expected to take days, not months. Indeed, the length of time it takes the Attorney General to designate a suitable facility is not the cause of the extensive pre-hospitalization delays we are seeing today. Those delays, which now extend to an astounding eight months, are attributable to the lack of available bed space at the handful of facilities the Bureau of Prisons (BOP) has equipped to conduct competency evaluations under § 4241(d).

The BOP's bureaucratic failure to allocate adequate agency resources to meet the demand for competency evaluations is not, of course, a legitimate excuse for failing to comply with the four-month time limit Congress imposed in § 4241(d)(1). In fact, Congress anticipated this very problem when it enacted § 4241 as part of the Insanity Defense Reform Act, 18 U.S.C. §§ 4241–4247. Congress specifically authorized the Attorney General to "contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter." § 4247(i)(A). This provision provides further confirmation, if any were needed, that Congress envisioned only a short gap between issuance of a commitment order under § 4241(d)(1) and a defendant's hospitalization. Even when the BOP itself lacks available bed space, it can contract with another entity to hospitalize defendants committed to the Attorney General's custody.

In short, I would hold that Congress intended § 4241(d)(1)'s four-month time limit to apply to the entire period of confinement, not just the period of hospitalization. Under that reading of the statute, Donnelly's rights were violated as of March 2022, four months after the district court issued its commitment order.