[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11349

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HAITHAM YOUSEF ALHINDI,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80085-AMC-1

_____

Before ROSENBAUM, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Mental competence is the key to a criminal defendant's ability to unlock the value of his constitutional trial rights. Indeed, without mental competence, a defendant cannot take advantage of "the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139–40 (1992) (Kennedy, J., concurring). For that reason, the Supreme Court has recognized that trying only mentally competent defendants "is fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). And sometimes, defendants may need medical treatment to attain this essential competence.

At the same time, involuntary hospitalization for mental-health treatment "constitutes a significant deprivation of liberty." *Addington v. Texas*, 441 U.S. 418, 425 (1979). So "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Federal law attempts to balance these concerns, among others. Towards that end, 18 U.S.C. § 4241 sets forth the procedures for determining a defendant's competency to stand trial and addressing any incompetency.

This case raises two questions about how we apply § 4241. First, we must decide whether the statute permits a court to order more than one competency hearing and commitment order for the

same defendant in a single case. Second, we must determine what exactly the four-month limitation in § 4241(d)(1) restricts: the defendant's commitment to the Attorney General under the district court's commitment order or the defendant's hospitalization.

On the first question, we conclude that district courts have authority to order more than one competency evaluation and commitment order. This text-based conclusion protects both the defendant's right not to be tried while incompetent *and* the defendant's right to avoid unnecessary hospitalization. As for § 4241(d)(1)'s four-month limitation, we hold that, by § 4241(d)(1)'s terms, the period begins with the defendant's hospitalization.

Applying these rules here, we determine that the district court's second commitment order did not violate § 4241 and was not otherwise an abuse of discretion. We also conclude that § 4241(d)(1)'s four-month limitation did not bear on the district court's authority to issue the second commitment order. So we affirm the district court's ruling.

## I.    BACKGROUND

### A.    *18 U.S.C. § 4241*

To understand the factual background and the legal issues before us, it's important to know how 18 U.S.C. § 4241 works. So we begin by summarizing that law.

Section 4241 specifies the procedures for determining a defendant's mental competency to stand trial. Under it, either party can move for a competency hearing "[a]t any time after the

commencement of a prosecution" and "prior to the sentencing of the defendant." 18 U.S.C. § 4241(a). If "reasonable cause to believe that the defendant may" be incompetent exists, the statute requires the court to grant the motion or order a competency hearing on its own motion. *Id.*

To help resolve a competency question under § 4241, the court may order a psychiatric or psychological examination of the defendant before the competency hearing. *Id.* § 4241(b).

After the hearing, if the court finds that the defendant "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court must commit the defendant to the custody of the Attorney General. *Id.* § 4241(d); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990).

Once the court commits the defendant to the Attorney General's custody, the Attorney General, acting through the Federal Bureau of Prisons ("Bureau"), must "hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)–(d)(1).

If the defendant does not attain competency during that treatment period and the pending charges against him are not otherwise "disposed of according to law," the defendant may remain

hospitalized for "an additional period of time." *Id.* § 4241(d)(2). But for that to happen, the district court must determine that a substantial probability exists that the defendant will attain the necessary competency for criminal proceedings to go forward. *Id.*

If the defendant does not attain competency even after an additional reasonable period of hospitalization and the charges remain pending, the defendant becomes subject to other commitment provisions. *Id.* § 4241(d).

With this sketch of § 4241 in mind, we explain the factual and procedural background of this appeal.

### B.      *Arrest and Indictment*

In May 2022, Haitham Yousef Alhindi was arrested on cyberstalking charges. The superseding indictment charged him with five counts of cyberstalking under 18 U.S.C. § 2261A(2)(A). That same month, after a detention hearing, the magistrate judge found that Alhindi presented a danger to the community and ordered pretrial detention.

### C.      *Initial Competency Determination*

Several weeks later, on July 14, 2022, Alhindi's counsel moved unopposed for a competency evaluation. The district court promptly granted the motion and ordered Alhindi to submit to a psychological examination under §§ 4241 and 4247. The district court also ordered the Bureau to complete that evaluation and prepare a report no later than August 26, 2022.

The Bureau failed to comply with that order. About three weeks after the court's deadline, on September 15, 2022, a Bureau warden sent a letter to the district court explaining that the Bureau had placed Alhindi in a facility in California for his competency evaluation. Alhindi arrived eight days before the report was due. But he had to quarantine under COVID protocols until August 29, three days after the report was due. Based on these circumstances, the Bureau asked for an extension through November 23 to complete the evaluation and report.

The court denied that request, instead ordering the Bureau to conduct an expedited competency evaluation and submit a report by October 14, 2022. The resulting report, dated October 14, concluded that Alhindi was incompetent. But the report was careful to note that it was based on limited information. So the report recommended commitment only "[o]ut of an abundance of caution."

The court held the first competency hearing on November 28, 2022. Based on the evidence, the district court found that Alhindi was incompetent and should be hospitalized under § 4241(d)(1) to attain competency. The district court ordered the Bureau to issue a report and recommendation by February 28, 2023, either requesting more time to treat Alhindi or recommending that he attained sufficient competency to continue criminal proceedings ("First Commitment Order"). To consider the Bureau's anticipated report and recommendation, the court scheduled a status conference for March 2, 2023.

Again, the Bureau failed to comply.  At some point close to the deadline for its report, the Bureau notified the court that it had not even hospitalized Alhindi yet.  So on February 27, 2023, the court again ordered the Bureau to hospitalize Alhindi in compliance with the First Commitment Order.

Then, on March 2, the Chief of the Bureau's Psychological Evaluations Section filed a sealed letter reporting that Alhindi was not exhibiting any signs of mental illness.  She recommended a second competency evaluation before committing Alhindi to the hospital.

### D.    Second Competency Determination

That same day, the district court ordered a second competency evaluation over objection from Alhindi's counsel.  In doing so, the court relied on the March 2 letter, including its statement that Alhindi said he wanted a second competency evaluation, and the fact that the October 2022 competency report was based on limited information.  The district court rejected Alhindi's counsel's arguments that ordering a second competency evaluation violated Alhindi's statutory and due-process rights.  To enable the district court to rule on Alhindi's competency, the district court ordered the Bureau to submit its new report within a few weeks, by March 29, 2023.

This time, the Bureau complied, filing a report on March 29. That report concluded that Alhindi was incompetent.

After another competency hearing on April 10, the district court again found Alhindi incompetent to proceed. Alhindi objected that further commitment would violate due process. He also moved to dismiss the indictment on due-process grounds and requested that the court decline to extend his commitment.

On April 21, 2023, the district court denied Alhindi's motion to dismiss the indictment and ordered the Bureau to begin the evaluative hospitalization of Alhindi under § 4241(d)(1) by July 1, 2023. That order, the "Second Commitment Order," required the Bureau to submit an evaluative report on Alhindi's condition by October 1, 2023. In the Order, the court rejected Alhindi's arguments that, under § 4241(d)(1), the Bureau had only four months from the date of the First Commitment Order in November 2022 to hospitalize and evaluate Alhindi's competency. Instead, the district court held that § 4241(d)'s four-month time limit begins at hospitalization, not at entry of the commitment order.

The Bureau admitted Alhindi to the hospital on June 21, 2023, under the Second Commitment Order. Three-and-a-half months later, on October 6, the Bureau filed its report. The report concluded that Alhindi remained incompetent but that he could attain competency through further treatment. So the Bureau requested an extension of Alhindi's hospitalization under § 4241(d)(2)(A).

For additional hospitalization, § 4241(d)(2)(A), by its terms, requires a court finding that the defendant is likely to attain competency through further treatment. § 4241(d)(2)(A) (authorizing

hospitalization "for an additional reasonable period of time . . . *if the court finds* that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward" (emphasis added)).  But the district court did not respond at that time to the Bureau's recommendation for further treatment.

### E.    Procedural History

Alhindi appealed the denial of his motion to dismiss the indictment and the Second Commitment Order.  Another panel of this Court dismissed for lack of jurisdiction the part of Alhindi's appeal that asserts the length of time he spent in pre-hospitalization detention violated his due-process rights.  It did so because it concluded that this argument was, in effect, a speedy-trial challenge that is not reviewable on interlocutory appeal.  On the other hand, that panel held that we have jurisdiction over the challenge to the Second Commitment Order.

For its part, the Government moved to dismiss the appeal as moot, arguing that Alhindi's hospitalization under the Second Commitment Order has ended.  It asserted that Alhindi's commitment under § 4241(d)(1) ended when the Bureau requested on October 6 under § 4241(d)(2) that the district court extend his commitment.  So, the Government contends, an appeal of the Second Commitment Order under § 4241(d)(1) is now moot.

At the end of January 2024, we heard oral argument on Alhindi's appeal of the Second Commitment Order.

A couple of weeks later, on February 15, 2024, Alhindi moved in the district court for his immediate release from the hospital. He objected to his continued hospitalization without a court finding under § 4241(d)(2)(A) that a substantial probability existed that he would attain competency through additional treatment. On February 21, four-and-a-half months after the Bureau made its original request to the district court to extend Alhindi's treatment to restore competency, the district court found under § 4241(d)(2)(A) that a substantial probability existed that, with the added hospitalization, Alhindi would attain competency. Thus, the district court ordered his continued hospitalization.

Then, on February 23, Alhindi appealed the district court's order under § 4241(d)(2)(A) for additional hospitalization. He also moved to consolidate his two appeals. And he moved for a stay pending resolution of the motion to consolidate. We denied both motions.

Alhindi remains hospitalized.

## II.    STANDARD OF REVIEW

This appeal requires us to consider whether the Second Commitment Order violates 18 U.S.C. § 4241. We review the grant or denial of a § 4241 motion for an abuse of discretion. *United States v. Nickels*, 324 F.3d 1250, 1251 (11th Cir. 2003) (per curiam). But to the extent that Alhindi challenges the Second Commitment Order as a violation of § 4241's text, we review the district court's statutory interpretation de novo. *United States v. Castro*, 455 F.3d 1249, 1251 (11th Cir. 2006) (per curiam).

## III.    DISCUSSION

This case concerns whether 18 U.S.C. § 4241 permitted the district court to order a second competency evaluation and commitment for evaluative hospitalization.  But before we can reach that question, we must first determine whether the district court's order hospitalizing Alhindi for additional time under § 4241(d)(2) has mooted Alhindi's appeal.  We conclude it has not.  So second, we consider whether § 4241 permits multiple competency evaluations and commitment orders.  We conclude it does.  Finally, we assess whether the Second Commitment Order violated the four-month time limit in § 4241(d)(1).  We conclude it did not.

A.    *The interlocutory appeal of the Second Commitment Order is not moot.*

Article III of the Constitution requires that a case or controversy "exist at all times during the litigation." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022); U.S. Const. art. III, § 2.  We lack jurisdiction once an appeal becomes moot because it can no longer "be characterized as an active case or controversy." *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

"[M]ootness concerns the availability of relief, not the existence of a lawsuit or an injury." *Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir. 2020).  So an appeal becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).  That is, even if

*full* relief is no longer available, an appeal does not become moot when *some* relief remains possible. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (1992) ("While a court may not be able to return the parties to the *status quo ante* . . . a court can fashion *some* form of meaningful relief in circumstances such as these . . . . The availability of this possible remedy is sufficient to prevent this case from being moot.").

The Government argues that Alhindi's appeal is moot because it challenges his confinement under § 4241(d)(1), and Alhindi is no longer confined under that section. Rather, he is now confined under § 4241(d)(2). As we've noted, the Second Commitment Order directed Alhindi's evaluative hospitalization under § 4241(d)(1). But on October 6, the Bureau filed its evaluative report in accordance with the Second Commitment Order. At that point, the Government asserts, Alhindi's confinement under § 4241(d)(1) ended, and his hospitalization under § 4241(d)(2) began. So, the Government argues, vacating the Second Commitment Order will not affect Alhindi's current hospitalization.

We disagree. To be sure, on February 21, the district court ordered Alhindi's further hospitalization under § 4241(d)(2).[1] But a district court can commit a defendant under § 4241(d)(2) only if it *first* enters a commitment order under § 4241(d)(1). Indeed, §

---

[1] As we've noted, Alhindi filed a notice of appeal challenging the district court's order for additional hospitalization. We express no opinion about whether Alhindi's current confinement is permissible under § 4241(d)(2) as that issue is not presently before us.

4241(d)(2) refers to an *"additional* reasonable period of time" for treatment. § 4241(d)(2) (emphasis added).  That is, it contemplates a period added on to the § 4241(d)(1) hospitalization period.  Put simply, the § 4241(d)(1) commitment order is a precondition to the court's ability under § 4241(d)(2) to order additional hospitalization. *See United States v. Mahoney*, 717 F.3d 257, 264 (1st Cir. 2013) (holding that an appeal of a § 4241(d)(1) commitment order was not moot even though the defendant was later committed under § 4246, reasoning that the defendant "continue[d] to hold a cognizable interest in the review of the initial determination of incompetency because the initial finding triggered a series of events resulting in his continuing confinement").

That means Alhindi still has an interest in determining whether the Second Commitment Order under § 4241(d)(1) was valid.  Indeed, if we vacated the Second Commitment Order, the Bureau would lack a basis to continue to detain Alhindi under § 4241(d)(2) because that section authorizes confinement only as additional treatment extending from a valid hospitalization under § 4241(d)(1).  So Alhindi has a live interest in the outcome of this appeal, and the appeal is not moot.

B.    *The district court had authority to issue a second competency evaluation and the Second Commitment Order.*

Alhindi asserts that once the district court issued its first commitment order in November 2022, it lacked authority to enter a second evaluation or commitment order.  For support, Alhindi points to the text of § 4241(d).  As Alhindi notes, nothing in the text

expressly authorizes the district court to order a second competency evaluation or commitment.

But then again, nothing in the statute specifically prohibits such orders, either. So we need to take a closer look at any clues the text provides us. As we have noted many times, we start our analysis with the text when we conduct statutory interpretation. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1162 (11th Cir. 2023). And when the text resolves our question, we end with it as well. *Id.* Here, we focus on two aspects of the text.

First, § 4241(a) empowers the defendant, the government, or even the court itself to trigger mental-competency proceedings. In other words, § 4241 allows any participant in the case to raise the issue of the defendant's competency. This feature of § 4241(a) underlines the importance of protecting both a defendant's right not to be tried if he is not mentally competent and the system's legitimacy by trying only mentally competent defendants.

And these concerns suggest, in turn, congressional intent to make the competency-evaluation process available as any participant (defendant, government, or court) in the case may reasonably believe it necessary. The availability of this process to all participants maximizes the likelihood that concerns over competency will be caught and addressed in real time. And as this case shows, different participants may think it necessary at different times during the trial proceedings, meaning more than one competency evaluation or commitment could result. After all, what is the point of a

mechanism for competency proceedings if the district court cannot order a competency evaluation even when it concludes reasonable cause exists to believe the defendant may be mentally incompetent?

Second, § 4241 employs broad language. Besides availing all participants in the case of the process to ensure a defendant's competency, the statute authorizes competency proceedings "[a]t any time" before sentencing. § 4241(a). The phrase "any time" means "[a]t whatever time." *Any time*, Oxford Dictionaries, https://premium.oxforddictionaries.com/us/definition/american_english/any-time?q=any+time (last visited April 1, 2024) [https://perma.cc/U34U-VNPG]. In other words, § 4241 places no limits on when or how often a participant in the case may seek competency proceedings for the defendant.

So the text alone is enough for us to conclude that § 4241(d) authorizes district courts to order more than one evaluation. Even though that's so, so we do not look further, we note that the primary purposes that § 4241 serves are consistent with the plain meaning of the text.

Section 4241's procedures implicate three primary interests: (1) the government's interest in prosecuting crimes, *Sell v. United States*, 539 U.S. 166, 180 (2003), which includes the public interest in the criminal-justice system's legitimacy; (2) a criminal defendant's right not to be tried while incompetent, *United States v. Cometa*, 966 F.3d 1285, 1291 (11th Cir. 2020); and (3) a defendant's liberty interest in avoiding confinement in a mental hospital,

*Zinermon v. Burch*, 494 U.S. 113, 131 (1990). Because these interests can be in tension with one another, § 4241 seeks to direct the proper balancing of them.

But reading § 4241 to limit district courts to entering only one order for a competency evaluation, no matter the circumstances, would upset that proper balance. Take this case. By its own admission, the Bureau recommended a finding that Alhindi lacked competence based on limited information and only "out of an abundance of caution." Not only that, but a few months after its recommendation and before Alhindi was hospitalized, the Bureau advised the court that Alhindi had not been exhibiting any signs of mental illness. And Alhindi himself allegedly asked for another evaluation. If § 4241 authorized only a single competency evaluation and Alhindi turned out to be competent, Alhindi would have been hospitalized unnecessarily under the First Commitment Order.

On the flip side, suppose the Bureau recommends and the district court finds a defendant to be competent after an evaluation under § 4241, but the defendant later exhibits signs of incompetency. If the district court could issue only one order for a competency evaluation under § 4241, it would be unable to order a second evaluation in those circumstances. And then the court would have no choice but to try the defendant when he could well be incompetent.

As the Supreme Court has recognized, mental competency can be fluid during criminal proceedings, and courts "must always

be alert" to changes in competency to ensure against trying incompetent defendants. *Drope*, 420 U.S. at 181. Section 4241 empowers courts to account for changes in competency "at any time" by ordering a competency evaluation. Limiting courts to only one order for a competency evaluation, no matter the defendant's condition, would risk trying an incompetent defendant or unnecessarily hospitalizing a competent one.[2]

In sum, § 4241 authorizes district courts to enter more than one competency-evaluation order if the circumstances warrant it and satisfy § 4241(a)'s criteria.

In reaching this conclusion, we find ourselves in good company. Several of our sister circuits have construed § 4241 the same way. *See, e.g., United States v. Kowalczyk*, 805 F.3d 847, 860 (9th Cir. 2015) ("[M]ultiple competency evaluations and determinations are permitted by § 4241[.]"); *United States v. Martinez-Haro*, 645 F.3d 1228, 1233 (10th Cir. 2011) ("[W]e read the statute to authorize a district court to order a second competency hearing when appropriate."); *United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989) ("It

---

[2] We recognize that the statutory language authorizes the district court to order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from" a mental incompetency. 18 U.S.C. § 4241(a). Here, the district court ordered the second competency evaluation in part because of new evidence that Alhindi may *not* have been suffering from a mental incompetency. But the power to order a competency evaluation when reasonable cause exists to believe the defendant is not competent to stand trial necessarily supposes the power to direct a competency evaluation when new evidence provides reasonable cause to believe a defendant found incompetent may not, in fact, be incompetent.

is . . . clear that the statute in no way limits the court to a single inquiry into a defendant's competency."); *cf. United States v. Maryea*, 704 F.3d 55, 69 (1st Cir. 2013) ("Even if a district court has found a defendant competent when the trial begins, 'a significant change in circumstances in the midst of trial may render a second competency hearing proper.'") (citation omitted); *United States v. Arenburg*, 605 F.3d 164, 169 (2d Cir. 2010) (holding that district courts have an obligation to revisit a defendant's competency if there is reasonable cause to do so); *United States v. Sherman*, 912 F.2d 907, 908–10 (7th Cir. 1990) (affirming the § 4241(d) commitment order entered after a second competency hearing); 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 209 (5th ed. 2023) ("The court may order a second competency evaluation if one is needed.").

Alhindi invites us to set aside the second order for a competency evaluation as the result of the Government's alleged "very thinly veiled attempt to restart the four-month clock mandated by section 4241(d)." But we disagree with Alhindi's premise. The record contradicts any inference that the Bureau precipitated a second competency hearing as a ploy to extend the clock.

As we've mentioned, on March 2, the district court received a letter from the Chief of the Bureau's Psychological Evaluations Section reporting that Alhindi was not exhibiting any signs of mental illness and that he may not need to be hospitalized after all. Nothing in the record supports a conclusion that this letter was disingenuous or that the Chief sent it to restart the clock. In fact, the

letter accords with what the district court and other psychological evaluators had concluded before about Alhindi: he can present in a calm and composed way that makes it difficult to discern his competency. Plus, the Bureau made its first competency evaluation based on limited information and recommended hospitalizing Alhindi only "out of an abundance of caution." So on these facts, a second competency evaluation was appropriate, if not necessary.

In short, § 4241 empowers district courts to order multiple competency evaluations and commitments for hospitalization when appropriate under the statute's terms. The district court acted within that authority here.

C.     *The Second Commitment Order did not itself violate statutory time limits.*

Next, Alhindi argues that the Second Commitment Order violated § 4241 for a different reason: § 4241(d)(1) sets a four-month time limit, and the district court filed the Second Commitment Order more than four months after it issued the First Commitment Order. In Alhindi's view, that four-month clock began running when the court issued the First Commitment Order, and it never stopped running. So under Alhindi's reading, the Second Commitment Order—which the district court entered about five months after it issued the First Commitment Order—violated § 4241(d)(1) by ordering the defendant's commitment beyond the four months that the statute allows.

We disagree. As always, we begin with the statutory text. *Sabal Trail*, 59 F.4th at 1162.

Section 4241(d) states, "If, after the hearing, the court finds" that the defendant is incompetent, "the court shall commit the defendant to the custody of the Attorney General.  The Attorney General *shall hospitalize the defendant for treatment* in a suitable facility—(1) *for such a reasonable period of time, not to exceed four months*, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward . . . ."  § 4241(d)–(d)(1) (emphasis added).  We conclude that the four-month limitation applies to the period of hospitalization.

For starters, that is the grammatically correct reading of the provision.  The phrase with the time limitation in it—"not to exceed four months"—modifies the prepositional phrase it follows: "for such a reasonable period of time."  So we know that a "reasonable period of time" is four months or less.  And "for such a reasonable period of time," in turn, modifies the phrase *it* follows: "[t]he Attorney General shall hospitalize the defendant for treatment."  When we put it all together, the text leaves only one grammatically correct possible conclusion: the four-month period that § 4241(d)(1) refers to is the period during which the defendant receives "treatment" while he is "hospitalize[d]."  And by the statutory terms, that period can begin only once the Attorney General "hospitalize[s] the defendant for treatment."

The Supreme Court has explained that "words are to be given the meaning that proper grammar and usage would assign them, [and] the rules of grammar govern statutory interpretation

unless they contradict legislative intent or purpose." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (cleaned up). We find no basis to conclude that the grammatically correct reading of § 4241(d)(1) contradicts congressional intent.

In fact, we have suggested that § 4241(d)'s four-month limitation, by its terms, applies to the hospitalization period only. In *United States v. Curtin*, the defendant argued that the Bureau doctors' report detailing their competency findings following the defendant's hospitalization "should have been submitted within [§ 4241(d)'s] four-month period." 78 F.4th 1299, 1308 (11th Cir. 2023). We rejected that notion. In so doing, we relied on the text, emphasizing that § 4241(d) "prescribes a 'reasonable period of time, not to exceed four months,' in which the government may '*hospitalize* the defendant.'" *Id.* (quoting 18 U.S.C. § 4241(d)) (emphasis added by the *Curtin* court).

When, as here, the text "is unambiguous and 'the statutory scheme is coherent and consistent,'" then our analysis ends. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citation omitted).

Alhindi disagrees with our analysis of the text. He notes that Congress enacted § 4241 in response to *Jackson v. Indiana*, 406 U.S. 715 (1972). *Jackson* held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is *committed*." *Id.* at 738 (emphasis added). Alhindi points to *Jackson*'s use of "committed" and § 4241's mandate that the "court *shall commit* the defendant to the custody of the Attorney General" after an incompetency finding. 18 U.S.C.

§ 4241(d) (emphasis added). Based on the matching verbs, Alhindi posits that Congress adopted the word "commit" from *Jackson* intending for the four-month period to refer to the entire commitment, not just the hospitalization period.

We are not persuaded. Alhindi's argument cannot overcome the plain text for two reasons.

First, the grammatical structure of the statute does not support Alhindi's suggested reading of it. As we've explained, "not to exceed four months" modifies "for such a reasonable period of time," which in turn modifies the verb phrase "shall hospitalize." § 4241(d)–(d)(1). Even if we ignored that the direction to the court to commit the defendant and the direction to the Attorney General to hospitalize the defendant are in separate sentences, it would make no difference to the textual analysis. If combined, the very long resulting sentence would look something like this: ". . . the court shall commit the defendant to the custody of the Attorney General, who shall hospitalize the defendant . . . for such a reasonable period of time, not to exceed four months . . . ." The phrase "not to exceed four months" would still modify "for such a reasonable period of time," which in turn would still modify the verb phrase "shall hospitalize," not "shall commit." *But see United States v. Donnelly*, 41 F.4th 1102, 1108–09 (9th Cir. 2022) (Watford, J., concurring).[3]

---

[3] Judge Watford's concurrence in *Donnelly* relied on a Senate Report accompanying the legislation that became § 4142(d) to conclude that the four-month

23-11349                Opinion of the Court                23

And second, to the extent that Alhindi argues the four-month period begins with the entry of the commitment order because the Attorney General's mandatory duty to hospitalize the defendant after entry of that order is immediate, we disagree. We think § 4241(d) implicitly recognizes that hospitalization cannot occur instantaneously. After all, upon the district court's entry of a commitment order, the Attorney General must find a "suitable facility" in which to hospitalize the defendant. § 4241(d). And § 4247(a)(2), in turn, defines a "suitable facility" as one based on "the nature of the offense and the characteristics of the defendant." The Attorney General must then coordinate with the "suitable facility" and transport the defendant there. As a practical matter, the

---

limitation referred to the commitment period. That Report explains, "In accord with the Supreme Court's holding in *Jackson v. Indiana*, commitment under section 4241 may only be for a reasonable period of time necessary to determine if there exists a substantial probability that the person will attain the capacity to permit the trial to go forward in the foreseeable future. Under section 4241(d)(1) the period may not exceed four months, however." S. Rep. No. 98-225, at 236 (1983) (footnote omitted). Noting that the Report does not separate commitment time from hospitalization time, and instead refers to a singular period that "may not exceed four months," Judge Watford concluded that the four-month restriction applies to the commitment period. *Donnelly*, 41 F.4th at 1108 (Watford, J., concurring). That concurrence's argument makes perfect sense, based on the Report. But we don't get to the legislative history when the text is not ambiguous. And for the reasons we've already explained, most respectfully, we don't think it is. Rather, a straightforward reading reveals that § 4241(d)'s four-month period limits only hospitalization. Plus, as we explain in the next paragraph of this opinion's text, other features of § 4241 also suggest, as a practical matter, that the four-month period cannot begin with the defendant's commitment.

Attorney General needs a reasonable amount of time to accomplish these things.[4]

\* \* \*

In closing, we take a moment to emphasize the importance of district courts' continued close supervision of competency proceedings. Alhindi has been stuck in competency limbo for over twenty months, less than nine of which have been for hospital treatment. To be sure, the district court here was diligent in checking in with the Bureau for much of the time. And district courts have a lot on their dockets. But even so, more than a four-month delay occurred between the Bureau's October 6, 2023, report requesting additional hospitalization for Alhindi to attain competency under § 4241(d)(2) and the district court's entry of an order making the necessary § 4241(d)(2)(A) finding. And Alhindi had to move for such a finding before the court entered it. Adherence to Congress's enumerated procedures is critical to ensure that defendants whose trial proceedings are delayed because of competency issues are receiving the help they need so timely trial proceedings may occur.

\* \* \*

---

[4] To the extent that Alhindi asserts that the Due Process Clause limits the time the Bureau has to hospitalize a defendant following a district court's order directing it to do so, *cf. Jackson*, 406 U.S. at 738, we lack jurisdiction to consider the argument. We leave resolution of that issue for a case in which it is properly presented.

Ultimately, we conclude that a district court may order more than one competency evaluation and issue more than one commitment order when the circumstances warrant it. We also conclude that § 4241(d)'s four-month time limit applies to the period of hospitalization. For these reasons, we hold that the district court did not err and did not abuse its discretion in issuing both the second competency evaluation order and the Second Commitment Order.

## IV.    CONCLUSION

We affirm the district court's entry of the Second Commitment Order.

**AFFIRMED.**

23-11349          ROSENBAUM, J., Concurring                    1

ROSENBAUM, Circuit Judge, Concurring:

I write separately to point out that our holding that the four-month time limit in § 4241(d) applies to the hospitalization period does not mean that the Attorney General has free rein under the statute to hold a defendant for an unreasonable prehospitalization period after the court has ordered commitment. At some point, the length of prehospitalization commitment becomes unreasonable within the context of § 4241(d)'s directives. And when that happens, the Attorney General violates § 4241. So if we're going to hold, as we do today, that § 4241's four-month time limit applies to hospitalization and that hospitalization does not have to occur instantaneously after entry of the commitment order, I think it's important to clarify that the prehospitalization period is also subject to reasonable limitations under § 4241.

Section 4241(d) states that if the district court finds that the defendant is incompetent, it "shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d). Then § 4241(d) provides that "[t]he Attorney General **shall** hospitalize the defendant for treatment in a suitable facility—(1) **for such a reasonable period of time, not to exceed four months**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and (2) for an additional **reasonable period of time** . . . ." to restore competency or dispose of the charges against the defendant. *Id.* (emphases added).

Two aspects of § 4241(d) stand out immediately: (1) the term "shall" imposes a mandatory duty on the Attorney General to hospitalize the defendant; and (2) the treatment must be for no more than "a reasonable period of time." 18 U.S.C. § 4241(d).

First, the Supreme Court has explained that when Congress "distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Me. Cmty. Health Options v. United States*, 590 U.S. ___, 140 S. Ct. 1308, 1321 (2020) (citation omitted). Congress used both the terms "may" and "shall" in § 4241. Indeed, § 4241(a) provides that "the defendant or the . . . Government *may* file a motion for a hearing to determine the mental competency of the defendant." § 4241(a) (emphasis added). And § 4241(b) allows that the district court "*may* order . . . a psychiatric or psychological examination of the defendant . . . ." § 4241(b) (emphasis added). Congress's selective use of the terms "may" and "shall" in § 4241 reflects that Congress deliberately chose to impose a mandatory duty on the Attorney General to hospitalize the defendant for a "reasonable period of time."

As to the second point, Congress's express limitation of the hospitalization to a "reasonable period of time" shows that Congress did not want the competency proceedings to drag on forever. Rather, Congress contemplated that reasonableness would govern the length of time that a defendant could be held in competency proceedings. Even though § 4241 does not expressly state a time limit for the period between the commitment order and hospitalization, no one could reasonably believe the statute permits an

unreasonable prehospitalization period. After all, it defies all logic to read § 4241 as imposing "reasonable period of time" (defined at one point as "not to exceed four months") restraints on hospitalization only to tolerate the Attorney General's excessive delay of hospitalization in the first place. Why bother limiting hospitalization to "a reasonable period" if the rest of the competency proceedings can last for an unreasonable period? That makes no sense and makes § 4241's limitation of a "reasonable period of time" meaningless.

Those two textual features of the statute work together to statutorily require the Attorney General to hospitalize the defendant within a reasonable period of time from entry of the commitment order. As I've noted, the text unambiguously requires the Attorney General to hospitalize the defendant. So the Attorney General cannot sit around forever waiting to do so. Rather, Congress has required him to act.

And we know Congress required him to act to hospitalize the defendant within a reasonable period of the entry of the commitment order because of the rest of § 4241's structure and context. Congress's repeated use of "reasonable period of time" within the statute necessarily caps the prehospitalization period as well as the hospitalization period. Construing § 4241 to tolerate an unreasonable period of prehospitalization commitment would mean that only the Due Process Clause limits the Attorney General's delay in hospitalizing a defendant. But delays that the Due Process Clause may tolerate may still amount to unreasonable delay under § 4241.

And if Congress wanted to limit the length of the competency proceedings to only whatever the constitutional due-process requirement tolerates, it would have had no reason to include the phrase "reasonable period of time" in § 4241.  After all, *Jackson v. Indiana*, 406 U.S. 715 (1972), had already held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  But in § 4241, Congress limited hospitalization to "a reasonable period" as a check on *Jackson*, which requires that the commitment period bear only "some reasonable *relation* to the purpose for which the individual is committed," (emphasis added), no matter the length of the commitment.

And when we construe a statute, we must "consider the entire text, in view of its structure and of the physical and logical relation of its many parts, when interpreting any particular part of the text." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) (citation and quotation marks omitted); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (explaining that courts "must read the words 'in their context and with a view to their place in the overall statutory scheme.'") (citation omitted); *Biden v. Nebraska*, 600 U.S. ——, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring) (citing A. Scalia, A Matter of Interpretation 37 (1997) ("In textual interpretation, context is everything.")).  And we "strive to avoid" interpretations that render statutory text surplusage. *United States v. F.E.B. Corp.*, 52 F.4th 916, 927 (11th Cir. 2022) (citing A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012)).

23-11349              ROSENBAUM, J., Concurring              5

All that is to say, the only reading of § 4241 that honors Congress's limitations on hospitalization to a "reasonable period" is the one that imposes reasonable limitations on the Attorney General's delay in hospitalizing a defendant in the first place. Otherwise, § 4241's limitation on hospitalization to "a reasonable period" does nothing to contain the period of competency proceedings. And any suggestion that § 4241 does not limit the Attorney General's delay between commitment and hospitalization risks implicitly authorizing the Attorney General to ignore Congress's clear intent to limit competency proceedings—including admission of a defendant for hospitalization—to a reasonable period.

During oral argument, the Government said that the average wait time for hospital treatment over the past few years has reached as much as nine months. The Government has chalked up the delay to a COVID backlog and says it now has the delay down to four to five months. That is still a long time.

Given the statutory text's requirement that the Attorney General find and place the defendant in a "suitable facility," and all that entails, I join today's opinion holding that § 4241 does not require hospitalization to occur *instantaneously* after the commitment order. But § 4241 provides no reason to believe that Congress expected the process of finding a suitable facility in which to hospitalize the defendant to meaningfully extend the competency proceedings. *See United States v. Donnelly*, 41 F.4th 1102, 1108 (9th Cir. 2022) (Watford, J., concurring) ("Congress . . . certainly [had] no reason to anticipate the lengthy pre-hospitalization delays that have now

become routine . . . . [The] process [of designating a suitable facility] can reasonably be expected to take days, not months.").

As I've explained, § 4241 imposes upon the Attorney General an obligation to timely evaluate and hospitalize defendants—that is, to do so within a reasonable period. In short, the Attorney General, acting through the Bureau of Prisons, must ensure that hospitalization occurs within a reasonable period from entry of the commitment order. When a defendant who requires hospitalization sits in detention without receiving his necessary treatment, that not only risks his health, but it also delays his ultimate recovery. And that in turn guarantees a delay in even the possibility of trial. No one contests the power of Congress to have enacted § 4241(d). So the Attorney General, on whom § 4241(d) expressly imposes duties, must comply with § 4241(d). It is not optional. Nor do we, as the Judiciary, have the power to excuse the Attorney General's failure to comply with Congress's directive in § 4241(d).

It may sound basic, but Congress enacts the laws. The Executive carries them out. And we interpret them consistent with congressional intent as we discern it from the statutory text. That is how the separation of powers works. *Patchak v. Zinke*, 583 U.S. 244, 249–50 (2018); *Barrett v. Indiana*, 229 U.S. 26 (1913) ("It is the province of the legislature to make the laws and of the courts to enforce them."). And it is what has kept our country functioning for more than two-hundred years. So when Congress is clear in its mandates and those mandates are constitutionally sound, the

23-11349            ROSENBAUM, J., Concurring            7

Attorney General must follow them, and we must hold the Attorney General to do so.

We as judges do not have the power to relieve others—especially another branch—of complying with constitutional, duly enacted laws of Congress. And so, while we hold that the four-month time limit that § 4241(d) expressly mandates applies to only the hospitalization period, it is equally clear that the statute does not authorize unreasonable prehospitalization wait times.