
# IN THE SUPREME COURT OF GUAM


**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**BEN CASTRO CRISOSTOMO,**
Defendant-Appellant.


Supreme Court Case No. CRA24-004
Superior Court Case No. CF0097-23


## OPINION


## Cite as: 2026 Guam 4


Appeal from the Superior Court of Guam
Argued and submitted on October 21, 2025
Hagåtña, Guam


Appearing for Defendant-Appellant:
Shannon Taitano, *Esq.*
Camacho & Taitano LLP
101 Chalan Santo Papa, Ste. 101
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Emily L.A. Rees, *Esq.*
Assistant Attorney General (former)
Office of the Attorney General
Appellate & Writing Division
134 W. Soledad Ave., Ste. 301
Hagåtña, GU 96910


**E-Received**
5/15/2026 11:22:11 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.[1]

**MARAMAN, J.:**

[1]     Defendant-Appellant Ben Castro Crisostomo appeals his convictions for aggravated assault, terrorizing, misdemeanor child abuse, and misdemeanor family violence. Crisostomo argues that his Sixth Amendment right to effective assistance of counsel was violated due to a conflict of interest.[2] Because Crisostomo's attorney from the Alternate Public Defender Office ("APD") had an actual conflict of interest for which prejudice is presumed, we reverse.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     Officers responded to an incident involving Crisostomo, whom they found in a truck with a wound on his head and blood "all over his body." Transcript ("Tr.") at 233, 235–36 (Jury Trial, Day 1, Apr. 5, 2023). It is undisputed that J.W. hit Crisostomo on the head with a hammer while he was lying in bed, fracturing his skull and causing serious injuries. Crisostomo was charged with (1) aggravated assault (as a third-degree felony), (2) terrorizing (as a third-degree felony), (3) child abuse (as a misdemeanor), and (4) family violence (as a misdemeanor). Crisostomo defended against the charges on the theory that J.W. fabricated allegations of abuse against him to justify her attack with the hammer. Tr. at 229–31 (Jury Trial, Day 1) ("[B]ecause . . . Mr. Crisostomo didn't die, there had to be a concocted story about why there was an attack.").

[3]     APD's Attorney Peter Santos was lead defense counsel at trial, but APD managing attorney Ana Gayle (together, "defense counsel") represented Crisostomo initially and at a pretrial

---

[1] The signatures in this opinion reflect the titles of the Justices at the time this matter was argued and submitted.

[2] Because reversal is necessary due to the conflict of interest, we do not address other issues raised on appeal.

conference.  Attorney Grant Olan was the prosecutor at trial, but Attorney Christine Tenorio appeared at a pretrial conference.

## A.  The Trial Court Denied Defense Counsel's Motion to Withdraw

[4]      P.C. is the father of J.W.'s two youngest children, Z.W. and Z.K.W.  Two days before trial, defense counsel moved to compel discovery, requesting police reports involving J.W. as a victim and P.C. as a suspect, claiming that J.W. made "nearly identical allegations" against P.C.  Record on Appeal ("RA"), tab 49 at 1 (Ex Parte Mot. Compel Disc., Apr. 3, 2023).  The same day, defense counsel also moved for the entire APD to withdraw as court-appointed counsel under Guam Rules of Professional Conduct ("GRPC") based on a conflict of interest.  RA, tab 44 at 1 (Ex Parte Mot. Withdraw, Apr. 3, 2023) (citing GRPC 1.7 (Conflict of Interest: Current Clients) and 1.9 (Duties to Former Clients)); RA, tab 41 at 3 ¶ 4 (Decl. Ct.-Appt. Counsel, Apr. 3, 2023).  Defense counsel explained that P.C. was a former APD client and claimed that he was a "potential adverse defendant" in this case.  RA, tab 44 at 1 (Ex Parte Mot. Withdraw); RA, tab 41 at 3 ¶ 4 (Decl. Ct.-Appt. Counsel); Tr. at 5 (Pretrial Conf., Apr. 3, 2023) ("[T]he basic argument is that the allegations against our client were actually committed by [P.C.]").  Defense counsel explained that the APD had represented P.C. on and off from 2008 until "at least" 2020.  Tr. at 6 (Pretrial Conf.).  Attorney Gayle stated in her declaration:

> 3.  Upon investigation, it is theorized that the alleged victim is lying about what the defendant had done to her - physically assault and terrorize her - and that she was assaulted by her former boyfriend, [P.C.]  [P.C.] is a former client of APD.
>
> 4.  Without revealing attorney-client privileged information, APD just withdraw [sic] from this case.

RA, tab 41 at 2–3 ¶¶ 3–4 (Decl. Ct.-Appt. Counsel).  Attorney Gayle did not state whether the attorney-client privileged information she had related to her representation of Crisostomo or of P.C.  APD did not include the specific case numbers in which it represented P.C., and the trial

court did not ask for them on the record.[3] Attorney Santos explained to the court that the APD's screening process was in place, but P.C.'s name was not part of discovery, so the conflict was not caught earlier. Tr. at 3, 14–15 (Pretrial Conf.). Attorney Santos stated, "[W]e believe that we are conflicted." *Id.* at 6.

**[5]** The trial court asked, "And did you have a chance to speak with your client about the withdrawal?" *Id.* at 3. Attorney Gayle responded, "I did, Your Honor. I explained it to him. He understands, up to a point." *Id.* at 3–4. The court noted, "[H]e is asserted, and he is currently detained. His 45th day runs on April 7th." *Id.* at 6–7. Attorney Tenorio appeared in Attorney Olan's absence and stated that the People's position was that there was no conflict and that withdrawal was unnecessary. *Id.* at 1–2, 4–6.

**[6]** After a recess, the court orally denied defense counsel's motion to withdraw:

> Defense counsel has moved to withdraw from this matter based upon a prior representation of a client who may have been involved somewhat in some matter in this particular case, at least as far as the Defense is concerned.
>
> The Court has reviewed the matters presented to it during the morning hearing, as well as what was filed [in the declaration]. The Court will deny the motion to withdraw. Based upon . . . Rule 1.9, . . . [t]he matter has to be the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client. Again, during the morning hearing, that was represented as not being the case, although there could be a potential adverse issue that's potential and not substantial.
>
> Also, APD's former representation of their former client is not substantially related to this matter. . . . [H]e's not stated to be a defendant, a victim, or a witness, . . . in this particular case. . . .

---

[3] We exercise our discretion to take judicial notice that at least some of the cases where the Alternate Public Defender ("APD") Office represented P.C. included the same or similar charges that Crisostomo faced. *See* Guam R. Evid. 201; *People v. Diaz*, 2007 Guam 3 ¶ 61. One case stemmed from an October 2021 incident between J.W. and P.C., where J.W. reportedly told police that P.C. broke into her home, threatened to kill her, put an axe to her head, and said "this is the end." *See* Super. Ct. Case No. CF0268-24 (Magistrate's Compl. at 4, Apr. 25, 2024) (based on allegations by J.W.). The APD was appointed to represent P.C. in that case, in which the charges are based on allegations by J.W. and a child witness (similar to Crisostomo's case). *See* CF0268-24 (Not. Ct. Appt. Counsel at 1, Apr. 25, 2024). A grand jury indicted P.C. on three charges in that case: aggravated assault as a third-degree felony, terrorizing as a third-degree felony, and possession of a Schedule II controlled substance. *See* CF0268-24 (Indictment at 1–3, May 2, 2024).

> You did indicate earlier that there may be a duty of loyalty. But the rule does not indicate a duty of loyalty other than what was stated within the provisions as far as the same or substantially related matter. So the Court, on those reasons, will deny the motion to withdraw.

*Id.* at 13–14. The court denied defense counsel's motion to withdraw because P.C. would not "be a defendant, a victim, or a witness" in Crisostomo's case. *Id.* at 14. The court also observed that "there could be a potential adverse issue," but differentiated it from a "substantially related matter," as required by GRPC 1.9. *Id.*; *see* Guam R. Prof'l Conduct 1.9(a) (prohibiting lawyer from representing another person in a "substantially related matter" if person's interests are adverse to former client). The trial court stated that it would issue a written decision and order on the motion but never did. *See* Tr. at 14 (Pretrial Conf.).

[7]     Two days later, on the first day of trial but before jury selection, the prosecution acknowledged finding a police report from October 2021 in which J.W. had filed a complaint against P.C. with the Domestic Assault Response Team ("DART"). However, the prosecution said that "the allegations in that case are dissimilar from the allegations in this case." Tr. at 6 (Jury Trial, Day 1). The court determined that it was unnecessary to review the complaint but allowed the defense to reserve the right to use it for impeachment if appropriate. *Id.* at 7.

[8]     The defense called L.W., J.W.'s mother, who testified that J.W. and P.C.'s relationship was "[n]ot too good." Tr. at 173 (Jury Trial, Day 4, Apr. 18, 2023). On cross-examination, the prosecutor asked whether L.W. had ever heard J.W. so "frantic or hysterical" as when she spoke with J.W. after J.W. hit Crisostomo with the hammer. *Id.* at 157. L.W. testified that the only other time was an incident between J.W. and P.C. about a year earlier. *Id.*

[9]     On cross-examination, defense counsel questioned J.W. about her allegations against P.C.:

> Q     So isn't it true that you made very similar claims like this against [P.C.], your ex-boyfriend?

A      No, not similar and they weren't claims.

. . . .

Q      So he never threatened to have you raped?

A      No, he didn't.

Q      He never threatened to kill you and your family off one by one?

A      No, he just said he'll kill all of us.  That's not one by one.

Tr. at 31 (Jury Trial, Day 4).  Defense counsel never used J.W.'s complaint against P.C. from the October 2021 police report for impeachment.  *See id.* at 31.

**B.  Verdict and Sentencing**

[10]  The jury found Crisostomo guilty of all charges.  The court sentenced Crisostomo to five years, with all but three years suspended, and with credit for time served.  Crisostomo timely appealed.

**C.  On Limited Remand, Crisostomo Failed to Establish a *Brady* Violation and Materiality**

[11]  Crisostomo moved to stay this appeal and for a limited remand, requesting that the case be sent back to the Superior Court to consider his claim that the prosecution failed to disclose exculpatory material.  Mot. Stay & Ltd. Remand at 1–5 (May 31, 2024).  The People did not oppose the motion.  Resp. Mot. Stay & Ltd. Remand at 1–4 (June 11, 2024).  We remanded the case to the Superior Court to consider Crisostomo's claim that the People failed to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  Ltd. Remand Order at 1–7 (July 18, 2024).  The Superior Court found that Crisostomo failed to establish a *Brady* violation and materiality because, despite having adequate time to prepare, the defendant "failed to identify with particularity what evidence was suppressed." Super. Ct. Case No. CF0097-23 (Dec. & Order Re. Ltd. Remand Order at 7–8, Oct. 16, 2024).

**D. Crisostomo's Appellate Counsel Filed an *Anders* Brief**

[12] While Crisostomo's motion to stay the appeal and for limited remand was under advisement, his court-appointed appellate counsel, Attorney Shannon Taitano, filed a motion to withdraw, accompanied by a brief filed under *Anders v. California*, 386 U.S. 738 (1967). Mot. Withdraw with Annexed Br. in Supp. ("*Anders* Brief") at 1 (June 24, 2024). After receiving Attorney Taitano's motion to withdraw, we vacated the briefing schedule and invited Crisostomo to file a *pro se* supplemental brief. Order at 2 (Oct. 29, 2024). Crisostomo did not file a *pro se* supplemental brief. This court considered the *Anders* Brief and examined the record to determine whether this appeal should proceed or be dismissed. *See* Guam R. App. P. 35. We determined that the appeal should proceed. Order at 2 (July 2, 2025).

[13] We denied Attorney Taitano's Motion to Withdraw as Counsel and required counsel to remain on the case and to represent and assist Crisostomo on appeal. *Id.* We instructed counsel to investigate at least the following nonfrivolous issues:

1. Whether the prosecutor's statements and behavior constituted misconduct and whether his reliance on Officer Villanueva's opinion testimony and potential bolstering was proper.

2. Whether Crisostomo's Sixth Amendment right to counsel was violated due to his defense counsel's potential conflict.

*Id.* Attorney Taitano filed an opening brief raising three issues: prosecutorial vouching, bolstering witness credibility, and APD's conflict.

## II. JURISDICTION

[14] This court has jurisdiction over a criminal appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-88 (2026)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[15]     "Ineffective assistance of counsel claims are mixed questions of law and fact, which we review *de novo*." *People v. Cruz*, 2023 Guam 1 ¶ 7 (quoting *People v. Guerrero*, 2017 Guam 4 ¶ 18). "[T]hese claims are typically more appropriately brought on a petition for a writ of habeas corpus, as these claims usually require an 'evidentiary inquiry beyond the official record.'" *Id.* (quoting *People v. Leon Guerrero*, 2001 Guam 19 ¶ 12). However, this court may hear ineffective assistance of counsel claims on direct appeal if the record is "sufficiently complete to make a proper finding." *Id.* (quoting *People v. Moses*, 2007 Guam 5 ¶ 9).

[16]     "We review the denial of a motion or request for substitution of counsel for abuse of discretion." *People v. Libby*, 2021 Guam 27 ¶ 14 (citing *United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001)). The Ninth Circuit "appl[ies] the same test for assessing whether the district court erred in failing to substitute counsel as [it] do[es] in evaluating whether an irreconcilable conflict exists." *United States v. Moore*, 159 F.3d 1154, 1159 (9th Cir. 1998).

## IV. ANALYSIS

[17]     Crisostomo raises two issues on appeal: (1) whether the prosecutor committed misconduct and (2) whether Crisostomo received ineffective assistance of counsel.[4] We conclude Crisostomo's defense counsel had an actual conflict of interest for which prejudice is presumed. *See Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980). Reversal of Crisostomo's convictions and a new trial are warranted due to the conflict of interest.

---

[4] Crisostomo's appellate counsel has provided incomplete briefing on the applicable standard of review: the opening and reply briefs discuss only the abuse of discretion standard from *People v. Libby*, 2021 Guam 27, but do not substantively address the constitutional dimensions of Crisostomo's Sixth Amendment claim. The People, however, correctly analyze Crisostomo's appeal under the frameworks established in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Although appellate counsel failed to brief the proper standard, we exercise our discretion to reach the merits of Crisostomo's constitutional claim because the applicable standard is *de novo* review and the People have adequately briefed the controlling legal standards. We therefore proceed to review Crisostomo's Sixth Amendment claim under the standards articulated by the People and established by this court's precedent.

[18]     The Sixth Amendment and the Organic Act guarantee criminal defendants in Guam the right to the assistance of counsel for their defense.  U.S. Const. amend. VI; 48 U.S.C.A. § 1421b(g), (u).  "The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Counsel can deprive a defendant of the right to effective assistance simply by failing to render adequate legal assistance."  *People v. Damian*, 2016 Guam 8 ¶ 28 (quoting *People v. Meseral*, 2014 Guam 13 ¶ 44).

[19]     As an initial matter, "most courts have held that an attorney's request for the appointment of separate counsel, based on h[er] representations as an officer of the court regarding a conflict of interests, should be granted."  *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978).  And "[w]hen a considered representation regarding a conflict in clients' interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation."  *Id.* at 486 n.9.

[20]     This court applies the U.S. Supreme Court's two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984), "to determine whether a defendant was denied the effective assistance of counsel."  *Meseral*, 2014 Guam 13 ¶ 45.  "The first part requires that a defendant demonstrate that his trial counsel's performance was deficient and fell below prevailing professional norms.  The second part requires that the defendant prove the deficient performance prejudiced him and deprived him of a fair trial."  *Cruz*, 2023 Guam 1 ¶ 8.

[21]     "[A] defendant is entitled to adequate and 'conflict free representation under the Sixth Amendment.'"  *Libby*, 2021 Guam 27 ¶ 17 (quoting *Moore*, 159 F.3d at 1157); *see also United States v. Quintero*, 995 F.3d 1044, 1059 (9th Cir. 2021) ("The Sixth Amendment guarantees defendants the right to 'effective assistance of counsel,' which includes 'a duty of loyalty' and 'a duty to avoid conflicts of interest.'" (quoting *Strickland*, 466 U.S. at 686, 688)).  "Trial courts presented with a conflict have an affirmative duty to protect a defendant's rights."  *Lockhart v.*

*Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001) (quoting *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir. 1987)).

**[22]**    A violation of a defendant's Sixth Amendment right to conflict-free counsel amounts to structural error: "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice . . . ."  *Cuyler*, 446 U.S. at 349; *see also Lockhart*, 250 F.3d at 1229 ("A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty.  This guarantee is so important that, unlike with other Sixth Amendment claims, when a defendant alleges an unconstitutional actual conflict of interest, prejudice must be presumed, and harmless error analysis does not apply." (citation modified)); *United States v. Walter-Eze*, 869 F.3d 891, 900 (9th Cir. 2017) ("An exception to [the] general rule [from *Strickland*, 466 U.S. at 688–94] applies where 'counsel is burdened by an actual conflict of interest.'  In such cases, where it is often 'difficult to measure the precise effect on the defense of representation corrupted by conflicting interests,' the Supreme Court has held that prejudice is presumed." (quoting *Strickland*, 466 U.S. at 692)).[5]  The Eleventh Circuit describes this presumption as a "limited presumption of prejudice" rather than a per se presumption of prejudice because the defendant must prove the conflict adversely affected his counsel's performance.  *LoConte v. Dugger*, 847 F.2d 745, 754 (11th Cir. 1988) (citing *Strickland*, 466 U.S. at 692).

---

[5] The Ninth Circuit has explained further that regardless of evidence of guilt, if the defendant can show trial counsel had an actual conflict, they are not required to show prejudice because it is presumed:

> We read *Sullivan* to define an actual, as opposed to a potential, conflict as one which in fact adversely affects the lawyer's performance.  But the requirement that the petitioner show this adverse effect is not the same as the requirement of *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978), *cert. denied*, 440 U.S. 974 (1979), that the petitioner show that counsel's incompetent assistance resulted in actual prejudice.  For example, overwhelming evidence of guilt might (as in *Cooper* itself) make almost impossible a showing that a relatively minor error resulted in actual prejudice.  But such evidence would be completely irrelevant to an inquiry whether the same error, if caused by an actual conflict of interest, showed an adverse effect on counsel's performance.

*United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

[23]    "However, 'a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.'" *Quintero*, 995 F.3d at 1059 (quoting *Cuyler*, 446 U.S. at 348). "The Sixth Amendment protects defendants only from *actual* conflicts of interest—not every potential conflict that could arise." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159–60 (1988)). "Thus, mere allegations of a potential conflict of interest are insufficient to demonstrate a violation of the Sixth Amendment." *Id.*

## A.  Crisostomo's Defense Counsel Had an Actual Conflict of Interest

[24]    The U.S. Supreme Court explained that until "a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (quoting *Cuyler*, 446 U.S. at 350). "[A]n 'actual conflict' is 'a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'" *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (quoting *Mickens*, 535 U.S. at 171); *see also United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001) (explaining that an actual conflict exists "when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action" (quoting *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994))).

[25]    To prove an actual conflict of interest adversely affected counsel's performance, a defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action" favoring one client over another. *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987) (citation omitted); *McFarland v. Yukins*, 356 F.3d 688, 707 (6th Cir. 2004) (collecting cases) ("[W]here counsel fails to pursue a strong and obvious defense, when pursuit of that defense would have inculpated counsel's other client, and where there is no countervailing benefit to the defendant from foregoing that defense or other explanation for counsel's conduct, these facts amount to evidence of disloyalty under any

interpretation of [*Cuyler*].").  Adverse effect from counsel's divided loyalty can be proven circumstantially "through evidence that the lawyer did something detrimental or failed to do something advantageous to one client that protected another client's interests." *Boykin v. Webb*, 541 F.3d 638, 644 (6th Cir. 2008) (quoting *McFarland*, 356 F.3d at 706).

[26]  Defense counsel's conflict stemmed from an earlier representation of P.C., the person Crisostomo claimed was responsible for the conduct alleged against him.  When asking to withdraw, Attorney Santos explained that "the basic argument is that the allegations against [Crisostomo] were actually committed by [P.C.]."  Tr. at 5 (Pretrial Conf.).  The cases Attorney Gayle handled for P.C. were directly relevant to Crisostomo's case, as Crisostomo's main defense was that J.W. was lying and that P.C. did what J.W. accused Crisostomo of doing.  *See id.*

[27]  In her declaration, Attorney Gayle explained that she could not compromise her duty of confidentiality but asked that the court allow APD to withdraw.  *See* RA, tab 41 at 3 ¶ 4 (Decl. Ct.-Appt. Counsel).  While Attorney Gayle did not specify whether she would be violating her duty of confidentiality to Crisostomo, to P.C., or to both clients, the context clarifies that APD possessed confidential information from its earlier representation of P.C. that created a barrier to a full defense of Crisostomo.  *See id.*

[28]  The conflict did not remain theoretical but instead actively affected defense counsel's performance in several concrete ways.  As Crisostomo argues, "[t]he conflict here arises not from P.C.'s role in the underlying incident, but from APD's inability to zealously pursue Crisostomo's defense due to competing loyalties."  *See* Appellant's Reply Br. at 2 (Aug. 29, 2025).  This conflict affected Crisostomo's defense in several ways.

[29]  First, Attorney Santos said the defense would not call P.C. as a witness, explaining that he was "hostile" toward the defendant.  Tr. at 5 (Pretrial Conf.).  This characterization "suggests P.C.

possessed potentially exculpatory or adversarial information that counsel could not pursue because of the prior representation." Reply Br. at 2.

[30]     Second, although Attorney Santos questioned multiple witnesses about P.C., including J.W., L.W. (J.W.'s mother), and Crisostomo, he never used J.W.'s complaint against P.C. from the October 2021 police report for impeachment, despite apparent opportunities to do so, *see* Tr. at 31 (Jury Trial, Day 4); Tr. at 6 (Jury Trial, Day 1).

[31]     Third, APD could not pursue Crisostomo's primary defense theory—that P.C., not Crisostomo, committed the alleged acts—without potentially breaching confidences obtained during the prior representation. *See* Appellant's Br. at 19 (July 16, 2025) ("APD cannot pursue this strategy because of duties owed to [P.C.]").

[32]     Crisostomo had a viable and obvious defense—that P.C., not Crisostomo, committed the alleged acts. Pursuing this defense may have inculpated P.C., APD's former client. The record reveals no strategic reason or countervailing benefit that would explain counsel's abandonment of Crisostomo's primary defense theory. *See McFarland*, 356 F.3d at 707. We agree with Crisostomo "that APD's dual loyalties prevented the pursuit of this defense theory." Reply Br. at 3. Under these circumstances, the facts "amount to evidence of disloyalty," establishing that APD's dual loyalties prevented zealous advocacy and created an actual conflict that adversely affected Crisostomo's representation. *See McFarland*, 356 F.3d at 707.

## B.  We Consider the Conflict Imputed to the Entire Alternate Public Defender's Office

[33]     Attorney Santos explained to the court that the APD's screening process failed in this case, Tr. at 3, 14–15 (Pretrial Conf.), and stated, "[W]e believe that we are conflicted," *id.* at 6. The People argue that "[t]rial counsel was not the same attorney that knew of APD's representation of P.C., so there would be no risk that counsel would not vigorously cross-examine any witnesses for fear of identifying confidential information." Appellee's Br. at 6 (Aug. 16, 2025). Attorney Gayle

requested that the entire APD be allowed to withdraw from representing Crisostomo. RA, tab 44 at 1 (Ex Parte Mot. Withdraw); RA, tab 41 at 3 ¶ 4 (Decl. Ct.-Appt. Counsel).

[34]     GRPC 1.10 governs the imputation of conflicts of interest and states:

> **Rule 1.10: Imputation of Conflicts of Interest: General Rule.**
>
> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Guam R. Prof'l Conduct 1.10. According to GRPC 1.10, if one lawyer in a firm is prohibited from representing a client due to a conflict of interest under Rules 1.7 or 1.9, this conflict extends to all lawyers within the firm. However, an exception applies when the conflict is based on a personal interest and does not significantly risk limiting the client's representation by other lawyers in the firm. The GRPC were adopted from the ABA Model Rules of Professional Conduct; therefore, the comments to the Model Rules are persuasive. *See Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 17. Comment 1 to Model Rule 1.10 explains that "the term 'firm' denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization." Model Rules of Pro. Conduct r. 1.10 cmt. 1 (A.B.A. 2025).

[35]     In the recently decided case of *In re Request of Leon Guerrero*, 2024 Guam 18 ¶¶ 49–58, we were asked to clarify the conflict-of-interest framework that applies to the Attorney General and his office. We referenced the Supreme Court of Washington's decision in *State v. Stenger*, 760 P.2d 357 (Wash. 1988) (en banc), stating that while a conflicted deputy prosecuting attorney must be screened and separated from the case, disqualifying the entire prosecuting attorney's office is unnecessary. *In re Request of Leon Guerrero*, 2024 Guam 18 ¶ 57 (quoting *Stenger*, 760 P.2d at 361). The *Stenger* court also observed that this reasoning extended to other public law offices,

including public defenders. *Id.* We concluded that only in extraordinary circumstances, such as an unscreened conflicted attorney's continued participation, is full office disqualification necessary. *Id.* ¶ 58.

[36]    Other jurisdictions have extended this logic to public defenders in addition to prosecutors. For example, *West v. People*, 2015 CO 5 (en banc), and *People v. McLaughlin*, 662 N.Y.S.2d 1019 (Sup. Ct. 1997), highlight the importance of screening conflicted attorneys to avoid disqualification of the entire legal aid society or public defender's office.

[37]    When denying the APD's motion to withdraw based on a conflict of interest, the trial court conducted no analysis under GRPC 1.10. APD Attorney Gayle—a managing attorney—had an actual conflict, remained unscreened, and brought this to the trial court's attention by asking for the entire APD to be discharged; however, the court denied the request. Under this extraordinary circumstance—where the managing attorney of the APD remained unscreened and continued to represent Crisostomo—disqualification of the entire APD is necessary. *See In re Request of Leon Guerrero*, 2024 Guam 18 ¶¶ 56–58; *West*, 2015 CO 5, ¶ 42 n.10; *McLaughlin*, 662 N.Y.S.2d at 1023. Therefore, the conflict is imputed to Attorney Santos under GRPC 1.10.

## C. Crisostomo's Sixth Amendment Right to Counsel Was Violated Due to APD's Actual Conflict of Interest

[38]    Crisostomo has shown that his trial counsel "*actively represented* conflicting interests." *See Mickens*, 535 U.S. at 175 (citation omitted). His trial counsel had an actual conflict of interest that Crisostomo did not waive. Under these circumstances, we must presume prejudice. *See Cuyler*, 446 U.S. at 349. We reverse Crisostomo's convictions. *See Strickland*, 466 U.S. at 692 ("Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of

interest." (citation omitted)); *Wheat*, 486 U.S. at 160 ("[C]ourts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.").

## D. The Trial Court Abused Its Discretion When It Denied the APD's Motion to Withdraw

[39]     Appellate counsel correctly concludes that "[t]he trial court's refusal to allow the withdrawal of conflicted counsel denied Crisostomo his Sixth Amendment right to effective representation."  Appellant's Br. at 16.  Yet, as discussed above, the briefing of Crisostomo's appellate counsel focuses almost exclusively on the abuse of discretion standard from *People v. Libby*, 2021 Guam 27, to the neglect of the constitutional standard.  We find it prudent to address the merits of the primary argument raised on appeal.  *See People v. Quinata*, 2023 Guam 25 ¶ 33 n.5 ("We decide the issues that are before us in a given case, with the benefit of careful briefing by both sides to reach an outcome.  This process is frustrated when we are left to make assumptions about the arguments presented by a party.").

[40]     Appellate counsel argues that when reviewing the denial of a request to withdraw, three factors are considered: "(1) the adequacy of the court's inquiry into the defendant's complaint, (2) the extent of conflict between the defendant and counsel, and (3) the timeliness of the motion and the extent of resulting inconvenience or delay."  Appellant's Br. at 17 (quoting *Libby*, 2021 Guam 27 ¶ 26).  We conclude the trial court abused its discretion because all three *Libby* factors weighed in favor of granting the APD's motion to withdraw.

### 1.  The factors in *Libby* apply regardless of the type of conflict

[41]     "Determining whether a defendant is denied conflict free representation rests on showing an actual conflict of interest, i.e., 'the existence of competing interests potentially affecting counsel's capacity to give undivided loyalty to his client's interest,' or of an irreconcilable conflict."  *Libby*, 2021 Guam 27 ¶ 18 (quoting *Moore*, 159 F.3d at 1158).  The People are correct

that *Libby* addressed the latter category of irreconcilable conflict, while Crisostomo's appeal concerns the former category of potentially compromised loyalty of his APD trial counsel. *See* Appellee's Br. at 7. However, the People are incorrect in asserting that this distinction has any significance. The Ninth Circuit has explained that "[t]he inquiry is . . . fact specific and does not rely on the characterization or type of conflict presented: an 'actual conflict is defined by its impact' on counsel's representation." *Walter-Eze*, 869 F.3d at 901 (quoting *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006)).

[42]     The Second Circuit similarly "has not questioned the universal applicability of the Supreme Court's conflicts precepts and has consistently applied the same basic doctrine in all conflict-of-interest situations." *Levy*, 25 F.3d at 153 n.5. The Ninth and Second Circuits apply the Supreme Court's conflict-of-interest case law similarly: they do not distinguish based on the type of conflict but simply require the finding of an actual conflict. *See Walter-Eze*, 869 F.3d at 901; *Levy*, 25 F.3d at 153 n.5.

[43]     The People argue that "[t]he factors in *People v. Libby* would be appropriate if Mr. Crisostomo claimed an irreconcilable conflict with his trial attorney that resulted in a complete breakdown of the relationship." Appellee's Br. at 7. However, the factors in *Libby* apply regardless of the type of conflict when this court reviews the denial of a motion to withdraw based on a conflict. *See Libby*, 2021 Guam 27 ¶ 26 ("In reviewing the denial of a request or motion for new counsel, we consider three factors . . . ." (quoting *United States v. Cassel*, 408 F.3d 622, 637 (9th Cir. 2005)) (citing *Nguyen*, 262 F.3d at 1004).

[44]     While the People rely on the factors set out by the Seventh Circuit for cases of successive representation, Appellee's Br. at 4 (citing *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004)), the Seventh Circuit cites the Ninth Circuit for these factors, *see Hall*, 371 F.3d at 973 (applying standard Seventh Circuit adopted from *Mannhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988) (citing

*Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir. 1995))); *Mannhalt*, 847 F.2d at 580 ("In successive representation, conflicts of interests may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.").  As the Seventh Circuit uses the Ninth Circuit's factors, and the Ninth Circuit does not distinguish between types of conflicts, the People's reliance on multiple distinctions makes no difference to our analysis.

### 2.   The trial court's inquiry into the conflict was inadequate

[45]    Crisostomo argues "[t]he trial court limited its review to discussion with trial counsel and the government about whether [P.C.] would be called to testify and if there was information obtained from previous representation that would affect ability [sic] to represent Crisostomo." Appellant's Br. at 18.

[46]    "Before the [trial] court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a 'sufficient basis for reaching an informed decision.'" *United States v. D'Amore*, 56 F.3d 1202, 1205 (9th Cir. 1995) (quoting *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986)), *overruled on other grounds by*, *United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999).  "For an inquiry regarding substitution of counsel[6] to be sufficient, the trial court should question the attorney or defendant 'privately and in depth,' and examine available witnesses." *Libby*, 2021 Guam 27 ¶ 20 (quoting *Nguyen*, 262 F.3d at 1004).

[47]    The trial court's surface-level, in-court examination failed to meet the "privately and in depth" standard required by *Libby*.  *See* 2021 Guam 27 ¶ 20.  The entire inquiry took place in open court, with the prosecution present.  The trial court did not explore the nature of APD's prior

---

[6] The Ninth Circuit "appl[ies] the same test for assessing whether the district court erred in failing to substitute counsel as [it] do[es] in evaluating whether an irreconcilable conflict exists." *United States v. Moore*, 159 F.3d 1154, 1158 n.3 (9th Cir. 1998).

representations of P.C., the specific circumstances creating the conflict, or how the conflict might impair counsel's ability to zealously advocate for Crisostomo.

**[48]** The trial court also did not confirm that Crisostomo knowingly, voluntarily, and intelligently waived his right to conflict-free counsel. *See* Appellant's Br. at 18 ("[T]here is no record of any meaningful inquiry with Crisostomo."). While "[a] criminal defendant has a Sixth Amendment right to a conflict-free attorney[, t]rial courts may allow an attorney to proceed despite a conflict 'if the defendant makes a voluntary, knowing, and intelligent waiver.'" *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998) (quoting *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994)).[7] The trial court asked whether Attorneys Gayle and Santos "[had] a chance to speak with [their] client about the withdrawal," to which Attorney Gayle responded that she "explained it to him" and that "[h]e understands, up to a point." Tr. at 3–4 (Pretrial Conf.). The record before us does not include confirmation of Crisostomo's consent in writing. It appears Crisostomo did not knowingly, intelligently, and voluntarily waive his right to conflict-free counsel. *See Martinez*, 143 F.3d at 1269.

**[49]** Therefore, the trial court did not conduct the inquiry necessary to create a "sufficient basis for reaching an informed decision." *See D'Amore*, 56 F.3d at 1205.

### 3. The extent of the conflict

**[50]** We addressed the second factor—whether there was an actual conflict of interest—above and concluded that the APD had an actual conflict of interest. The extent of the conflict indicates

---

[7] Guam Rules of Professional Conduct 1.7 and 1.9 both require consent confirmed in writing. Guam R. Prof'l Conduct 1.7(b)(4), 1.9(a), (b)(2). Furthermore, the comment to ABA Model Rule 1.7 states that if there was a conflict, Crisostomo's informed consent was required:

> If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b).

*See* Model Rules of Pro. Conduct r. 1.7 cmt. 4 (A.B.A. 2025). The record does not indicate that Crisostomo gave informed consent to proceed despite the conflict.

that the APD's withdrawal motion should have been granted, favoring a conclusion that the trial court abused its discretion. We thus proceed with the final factor.

### 4. The timeliness of the motion and the extent of the resulting inconvenience or delay

[51] Crisostomo argues that "[t]he brief delay required to appoint new counsel pales in comparison to the constitutional violation of forcing a defendant to proceed with counsel who cannot zealously advocate due to conflicting loyalties." Appellant's Br. at 20.

[52] "[W]hen a motion is made on the day of trial, the court must make a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice." *Libby*, 2021 Guam 27 ¶ 42 (alteration in original) (quoting *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 780 (9th Cir. 2001)). "[T]his Court may also look to whether the trial judge considered the length of continuance needed for a new attorney to prepare, the degree of inconvenience the delay would cause, and why the motion to substitute counsel was not made earlier." *Nguyen*, 262 F.3d at 1005. The harm of proceeding with conflicted counsel outweighs the administrative inconvenience of a brief continuance. *See id.* at 1004.

[53] The APD moved to withdraw as counsel two days before the trial was set to begin. RA, tab 44 at 1 (Ex Parte Mot. Withdraw). The trial court considered that Crisostomo had asserted his statutory right to a speedy trial, *see* Tr. at 6–7 (Pretrial Conf.), but did not investigate how much time it would take to substitute counsel or assess the genuine degree of inconvenience beyond scheduling. The APD acknowledged that it did not catch the conflict earlier, which led to the delayed motion. *See id.* at 3, 14–15. Ultimately, this factor favors concluding that the trial court abused its discretion when weighed against Crisostomo's Sixth Amendment right to effective assistance of counsel. *See Libby*, 2021 Guam 27 ¶ 42; *Nguyen*, 262 F.3d at 1004 ("The mere fact

that the jury pool was ready for selection or even that the jury was ready for trial does not automatically outweigh [a defendant's] Sixth Amendment right.").

**[54]**    Because all three *Libby* factors weighed in favor of granting the APD's motion to withdraw, the trial court abused its discretion when it denied the motion.  *See* 2021 Guam 27 ¶ 26.

## V.  CONCLUSION

**[55]**    Because court-appointed trial counsel had an actual conflict of interest that adversely affected the representation of Crisostomo, we must presume prejudice and **REVERSE** Crisostomo's convictions.  We **REMAND** for further proceedings not inconsistent with this opinion.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
ROBERT J. TORRES
Chief Justice